## 58807. RIDDLE v. DRIEBE.

BIRDSONG, Judge.

Legal malpractice. The appellant Riddle seeks the reversal of a grant of summary judgment to attorney Driebe based upon the running of the statute of limitation. The rather convoluted facts of this case show that Executive Equities, Inc. unsuccessfully attempted to borrow $2,000,000 in order to purchase land. Appellant Riddle, becoming aware of the difficulty, prevailed upon Georgia International Corp. to act as guarantor for such a loan and Executive Equities was enabled to obtain the loan. As compensation to Riddle for his services, the president of Executive Equities orally agreed to pay Riddle a 10% real estate commission when and if the property was sold. A sale of the property would have provided Riddle with a commission of slightly in excess of

$500,000, because of the enhanced value and sale price of the property. A tentative purchase option agreement which provided for the 10% commission was drawn up between Executive Equities and Riddle. This tentative agreement was never executed. The attorney for Executive Equities objected to such a large fee and apparently advised the president to seek a lower figure. This objection was communicated to Riddle. Riddle then asked his attorney, Driebe, to draw what ended up as an exclusive sales agency agreement. Riddle furnished Driebe with a copy of the tentative purchase option agreement. Driebe prepared a contract for Riddle in accordance with Riddle's directions which provided for the payment of a 10% sales commission. However, it further appears that both Riddle and the president of Executive Equities were aware that a separate purchase option agreement covering the commission objections of Executive Equities' attorney was to be signed by Riddle and Executive Equities spelling out a commission different from that provided in the sales agency agreement. It was understood by both Riddle and the president of Executive Equities that the exclusive sales agency agreement was to be contemporaneous with and be supplemental to the purchase option agreement drawn up by Executive Equities and was designed to overcome the objections of Executive Equities' attorney as well as to protect the 10% sales commission orally promised to Riddle. However, the sales agency agreement by its own terms was made *subject to* the aftersigned purchase option agreement. Driebe drew up the sales agency agreement in time for Riddle to carry it with him to the closing of the loan. Executive Equities and Riddle executed the sales agency agreement calling for a 10% commission immediately prior to Riddle's execution of the purchase option agreement. Riddle stated that he signed that latter agreement but did not examine its contents, assuming that it provided for the same commission as the sales agency agreement. The purchase option agreement actually provided that Riddle's commission would be limited to $100,000. Any discrepancy between the two documents was unknown to Driebe at the time of the signing. There was an amendment to the sales agency

agreement subsequent to the signing of the purchase option agreement but the discrepancy between the 10% commission and the sum of $100,000 was not addressed. It is uncontested that Driebe was not present when either the purchase option agreement or the sales agency agreement was signed and did not give Riddle any advice as to whether to sign either document. Also, there is no contention that the terms of the sales agency agreement did not contain the provisions requested by Riddle. The original sales agency agreement prepared by Driebe is dated September 30, 1971, and the amendment thereto dated May 31, 1972.

In 1972 or 1973, the property sold. Riddle became aware of the discrepancy in the amount of commission and on or before October 5, 1973, sought the services of an attorney other than Driebe to assist him (Riddle) in collecting his 10% sales commission. This attorney communicated with Executive Equities and, referring to the sales agency agreement, indicated that Riddle would insist upon his 10% commission. After some negotiation, on October 10, 1973, the attorney for Executive Equities took the position that the $100,000 commission provided in the purchase option agreement took precedence over the 10% provision in the exclusive sales agency agreement and indicated, in effect, that if Riddle insisted upon the 10% figure, no commission would be paid until the discrepancy was resolved by litigation. Upon advice of counsel, on October 1, 1974, Riddle accepted the $100,000 and executed a full release to Executive Equities. Riddle offered evidence by deposition that Driebe had continued to insist in early 1974, a period of several months after the dispute arose with Executive Equities' attorney as to which of the two agreements was enforceable that the exclusive sales agency agreement was a valid and enforceable document. It is these protestations by Driebe that Riddle contends amounted to fraud on the part of Driebe and tolled the statute of limitation. Riddle filed the present complaint on October 20, 1977, over 5-1/2 years after the last document was prepared by Driebe, over four years after Riddle made demand for the 10% commission and was told that such payment would not be made because of the precedence of the purchase option

agreement over the exclusive sales agreement, but less than four years after Driebe allegedly last stated that the sales agency agreement was a valid and enforceable document. Driebe moved for grant of summary judgment based upon the running of the statute of limitation. The trial court granted the motion on that basis. Riddle brings this appeal enumerating as error the grant. *Held:*

In Georgia legal malpractice is based upon the breach of a duty imposed by the attorney-client contract of employment, and as such, the applicable statute of limitation is four years. Code Ann. § 3-706; *Gould v. Palmer,* 96 Ga. 798 (22 SE 583); *Riser v. Livsey,* 138 Ga. App. 615 (227 SE2d 88). It is clear that an action for attorney malpractice accrues and the period of limitations begins to run, from the date of the attorney's breach of duty, that is, from the date of the alleged negligent or unskillful act. *Hoffman v. Ins. Co. of N. America,* 144 Ga. App. 420 (241 SE2d 303); *Master Mortgage Corp. v. Byers,* 130 Ga. App. 97 (202 SE2d 566). In this case it is uncontested that Driebe's legal actions consisted only in drawing up the sales agency agreement and the amendment thereto, and the last of these documents was prepared on May 31, 1972, over five years before the instant complaint was filed. It is also clear that Driebe was no longer representing Riddle in October, 1973, when Riddle obtained the services of another attorney.

Appellant Riddle attempts to avoid the consequences of the late filing by arguing first that he did not discover the impropriety of the documents until October, 1974, when the settlement on the $100,000 commission occurred. However, it is undisputed that Riddle was informed by letter dated October 12, 1973, that his claim for the 10% commission was disputed because of the signed purchase option agreement that he would accept $100,000 as his commission. At no time did Riddle bring suit against Executive Equities to attempt to establish the validity of the sales agency agreement, which well he might have done considering the apparent original desire of the president of Executive Equities that the sales agency agreement rather than the purchase option agreement express the true intent of the parties. At best Riddle can argue that there was an unresolved question

as to whether the collectible commission was either $100,000 or $500,000 and not that the sales agency agreement was so deficient as to deny him entitlement to any commission. The mere fact that Riddle, on the advice of other counsel, accepted the lesser figure, does not establish the unenforceability of the sales agency agreement. Logic compels the conclusion that Riddle was as aware of the dispute involving the conflicting agreements in October, 1973, as he was in October, 1974. We conclude that the doctrine of delayed discovery does not aid him in avoiding the consequences of the late filing of his complaint.

Nevertheless, in his second ground of attack, Riddle avers that Driebe's continuing promises that the sales agency agreement was valid amounted to knowingly fraudulent statements and that these statements deterred Riddle from becoming aware that the sales agency agreements were legally defective and deterred him from bringing suit. This assertion is made in the face of the fact that Driebe no longer represented Riddle, and at a time when Riddle was following the advice of another attorney. If Riddle is speaking of being deterred from bringing suit against Executive Equities, the assertion is meaningless for Riddle never brought suit against Executive Equities nor attempted to do so. If Riddle is arguing that he was deterred from bringing suit against Driebe, his argument also lacks force. There is no assertion by Riddle that Driebe rendered any such opinions as to the validity of the sales agency agreement after early 1974. Yet Riddle did not bring his complaint against Driebe for over 3-1/2 years thereafter. Riddle does not contend that Driebe sought in any way to prevent Riddle from bringing suit either against Executive Equities or Driebe himself. At most Driebe merely contended that, in his opinion, the 1971 agreement was legally enforceable. *This opinion has never been put to test.*

The fraud which will relieve the bar of the statute of limitation must be of that character which involves moral turpitude, and must have the effect of debarring or deterring the plaintiff from his action. *Anderson v. Foster,* 112 Ga. 270 (37 SE 426). We hold that mere statements by the attorney Driebe to the effect that the documents which

he had prepared for Riddle were legally sufficient, are not actionable as actual fraud nor designed to deter or debar Riddle from bringing suit. Such expressions of opinion (as opposed to obfuscating facts) are not sufficient to establish the fraud required to toll the statute of limitation pursuant to Code § 3-807. *Webb v. Lewis,* 133 Ga. App. 18, 21 (2) (209 SE2d 712); *Ponder v. Barrett,* 46 Ga. App. 757 (2) (169 SE 257). Fraud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events. *Cheney v. Barber,* 144 Ga. App. 720 (242 SE2d 358); *Bryant v. Branch,* 142 Ga. App. 189 (235 SE2d 688). In any event, as we have held, Riddle knew as early as October, 1973 that the validity of the sales agency agreement giving him a 10% commission was held in sharp legal dispute by Executive Equities. The gratuitous opinions offered by attorney Driebe that the sales agreement was legally *enforceable* did not dispel or mitigate the fact that it *was disputed,* which fact Riddle knew and which fact, at least as early as that time in October, 1973, started the statute of limitation running as to suit against Driebe for any legal malpractice.

The purpose of the Summary Judgment Act is to eliminate the necessity for trial by jury where, giving the opposing party the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence, there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. *Summer-Minter & Assoc. v. Giordano,* 231 Ga. 601, 603 (203 SE2d 173); *Holland v. Sanfax Corp.,* 106 Ga. App. 1 (126 SE2d 442). Appellee Driebe has met that burden. It follows that the trial court did not err in granting him summary judgment.

*Judgment affirmed. Quillian, P. J., and Smith, J., concur.*

ARGUED NOVEMBER 19, 1979 — DECIDED FEBRUARY 4, 1980.

*Glover McGhee, John F. Sacha, G. Bland Byrne,* for appellant.

*John E. Talmadge, Barry S. Mittenthal, David A.*

*Handley, Jack O. Morse, Charles J. Driebe,* for appellee.