61644, 61645. CHARTER MEDICAL MANAGEMENT COMPANY v. WARE MANOR, INC.; and vice versa.

CARLEY, Judge.

In December 1974, Ware Manor, Inc. ("Ware Manor"), a nursing home corporation, entered into an agreement with Charter Medical Management Company ("Charter") whereby Charter would manage a nursing home facility which, at the time of the agreement, was under construction. In May of 1975, pursuant to the agreement of the parties, the facility opened and began operation under Charter's management. From May 1975 through February 1976 the facility failed to make a profit and, in fact, showed a loss of $76,263.00. As a result of these losses, Ware Manor decided to terminate the management agreement and discussions to this effect were held in February of 1976. These discussions resulted in the execution by Ware Manor of two promissory notes in favor of Charter. The first note dated March 10, 1976 in the principal amount of $10,000.00 was due on April 9, 1976. The second note also dated March 10, 1976 was in the principal amount of $27,833.68 and called for payment in nine equal installments commencing on April 30, 1976. Subsequently, the agreement to terminate the management contract was reduced to writing and consented to by Ware Manor on March 22, 1976.

The $10,000.00 note was ultimately paid in full. However, Ware Manor defaulted on the second note and this suit was then instituted by Charter seeking to recover the unpaid principal of $27,833.68, plus interest and attorneys fees. Ware Manor answered and admitted execution of the note, receipt of the attorneys fees notice pursuant to Code Ann. § 20-506 and that no payments had been made on the note. However, Ware Manor defended on the basis of total failure of

consideration for the note, misrepresentation, and alleged duress in the execution thereof. Ware Manor also counterclaimed, alleging fraud and deceit in the inducement of the management contract and a breach thereof based upon alleged mismanagement.

After discovery the case proceeded to trial. The trial court overruled Charter's motion for directed verdict made at the close of all the evidence. A jury verdict was returned against Charter on the note and in favor of Ware Manor in the amount of $10,000.00 on the counterclaim. A motion for judgment notwithstanding the verdict was filed by Charter and denied. In Case No. 61644 Charter appeals and in Case No. 61645 Ware Manor cross-appeals.

In the main appeal Charter contends that the trial court erred in failing to grant its motion for directed verdict, in entering judgment upon the jury verdict in favor of Ware Manor, and in denying its motion for judgment notwithstanding the verdict. Charter's prima facie right to judgment was established by uncontested evidence showing execution of the note, compliance with the statutory requirements of Code Ann. § 20-506, and non-payment of the note. Code Ann. § 109A-3—307 (2); *Freezamatic Corp. v. Brigadier Ind. Corp.,* 125 Ga. App. 767 (189 SE2d 108) (1972). Therefore, the issues for resolution in the main appeal are limited to a determination of the viability of Ware Manor's defenses to the note and the validity of Ware Manor's counterclaim.

1. With regard to the failure of consideration defense, the record reveals that management fees due Charter for each month that it operated the nursing home had been deferred by virtue of an addendum to the management contract. It is uncontested that the promissory note sued upon represented unpaid management fees which had accrued up until the time the parties agreed to terminate their relationship. However, Ware Manor alleged that *"[s]ince* the execution of said note [it] has ascertained that said services were performed in such a negligent and unskillful manner as to be totally worthless and without value to [Ware Manor] . . ." (Emphasis supplied.)

"Want or failure of consideration is a defense . . . except that no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind." Code Ann. § 109A-3—408; *Beazley v. Ga. R. Bank &c. Co.,* 144 Ga. App. 215 (241 SE2d 39) (1977). "The execution of a note in payment of an account operates to cut off all defenses to the account of which the maker then had knowledge. [Cits.]" *Ameagle Contractors v. Va. Supply &c. Co.,* 144 Ga. App. 477 (1) (241 SE2d 594) (1978). Accord, *Berry v. Atlas Metals,* 152 Ga. App. 437, 439 (263 SE2d 179) (1979).

In the instant case, it is clear that the promissory note sued upon was given in payment of the antecedent obligation which Ware Manor owed to Charter for services rendered under the management contract. As the termination agreement specifically refers to Ware Manor's obligations on both notes, it is clear that the note sued upon constituted at least a portion of the consideration for the agreement between the parties to terminate the management contract. Cf. *Smith v. Rothstein,* 131 Ga. App. 632 (3) (206 SE2d 592) (1974). The evidence reveals that Ware Manor was continually aware of the money losses incurred by the facility, that Ware Manor began expressing dissatisfaction with such losses after the third or fourth month of Charter's management, and that Ware Manor knew at the time of the execution of the note that the business had sustained losses totalling approximately $76,000.00. Thus, to the extent that Ware Manor relied upon such losses to support its contention that Charter's services were worthless, Ware Manor was aware of this defense prior to execution of the note. For the foregoing reason, the defense of failure of consideration is without merit.

2. Ware Manor also asserted that it was fraudulently induced to execute the note by virtue of false representations by Charter that its services rendered under the management contract had been performed in a proper and skillful manner. "In order to show fraud and misrepresentation in the procurement of the contract as a defense to an action on the contract, it is not sufficient to show that false representations were made, which were known to be false and which were made with the intention to deceive. It must also be shown that the defendant exercised due care to discover the fraud . . . [Cits.]" *Dr. Pepper Finance Corp. v. Cooper,* 215 Ga. 598, 601 (112 SE2d 585) (1960). " 'Misrepresentations are not actionable unless the hearer was justified in relying on them in the exercise of common prudence and diligence.' [Cits.]" *Daugert v. Holland Furnace Co.,* 107 Ga. App. 566, 569 (130 SE2d 763) (1963).

Applying the foregoing principles to the facts of the instant case, Ware Manor's defense based upon alleged misrepresentation is not viable. First, no evidence was introduced that any statements relating to the nature or quality of the past services rendered by Charter were made by anyone at the time of execution of the note. Secondly, Ware Manor's contention that the services rendered by Charter were not performed in a proper and skillful manner was premised upon the fact that the nursing facility lost approximately $76,000.00 prior to the termination of the management contract. As discussed above, it is apparent that Ware Manor was aware of these losses prior to its execution of the note as payment for the past services. Under these facts, even assuming these alleged

misrepresentations were made, Ware Manor would not have been justified in relying on them in the exercise of common prudence and diligence. *Dr. Pepper Finance Corp. v. Cooper,* 215 Ga. 598, supra. "A false statement is not fraudulent when there is no reason why the statement should be believed or acted upon." *Feingold v. McDonald Mtg. & Realty Co.,* 166 Ga. 838 (2) (145 SE 90) (1928). This defense was also without merit.

3. Ware Manor's defense of duress was premised upon the allegation that Charter refused to release financial records in its possession which were vital to the operation of the nursing home unless Ware Manor executed the note sued upon. Code Ann. § 20-503 provides, in part: "The free assent of the parties being essential to a valid contract, duress, either of imprisonment or by threats, or other acts, by which the free will of the party is restrained and his consent induced, will render the contract voidable at the instance of the injured party." In the past it has been acknowledged that detention of another's chattels under proper circumstances might be sufficient duress to avoid a contract. *Whitt v. Blount,* 124 Ga. 671, 674 (53 SE 205) (1905). "Business compulsion" or "economic duress" involves the taking of undue or unjust advantage of a person's economic necessity or distress to coerce him into making a contract and is also recognized as a contractual defense. See generally 25 AmJur2d, Duress and Undue Influence, §§ 6, 7 (1966); Ann., 79 ALR3d 598 (1977). However, a duress claim of this nature must be based upon acts or conducts of the opposite party which are wrongful or unlawful. *Causey v. Matson,* 215 Ga. 306, 311 (110 SE2d 356) (1959); *Cannon v. Kitchens,* 240 Ga. 239 (240 SE2d 78) (1977). See generally 13 Williston on Contracts § 1617 (3d ed. 1970).

In the instant case, it does not appear that Charter's conduct in refusing to release the financial records was wrongful or unlawful. Charter's responsibilities and duties under the management contract required it to design and maintain the financial records in question. On March 10, 1976, the date of the execution of the note, the management contract had not been formally terminated and Charter was still obligated to perform its duties thereunder which included maintaining these records. Thus, we do not believe that Charter's conduct — at that particular point in time — was wrongful or unlawful so as to constitute duress. See *Leader & Rosansky v. Mathews,* 135 Ga. 468 (69 SE 721) (1910).

Moreover, even if Charter's actions could otherwise be construed as sufficient duress to avoid the note, the record conclusively establishes that Ware Manor waived its rights to rely upon any such duress as a defense. First, we note that the record reveals that Ware Manor acknowledged that the termination

agreement and both the $10,000.00 note and the note sued upon were executed as part of the same transaction, i.e., the termination of the management contract. Thus, these documents must be considered together in determining the complete agreement. See Code Ann. § 109A-3—119; *Crosby v. Jordan,* 123 Ga. App. 83 (2) (179 SE2d 537) (1970). As was the note sued upon, the $10,000.00 note was executed on March 10, 1976 and under the same alleged duress. However, this $10,000.00 note was paid by Ware Manor on April 19, 1976, over a month after the release of the records by Charter had been made. In addition, the termination agreement which specifically referred to Ware Manor's obligations on both notes was executed on March 22, 1976 — 12 days after the release of the records.

It has long been the law of this state that "[w]here the execution of a contract is procured by duress, the person executing it may, after removal of the duress, waive the duress and ratify the contract." *Augusta Motor Sales Co. v. King,* 36 Ga. App. 541 (1) (137 SE 102) (1926). Accord *Monk v. Holden,* 186 Ga. 549, 555 (2) (198 SE 697) (1938). The record in this case shows without contradiction that Ware Manor affirmed its obligation to pay *both* notes by executing the termination agreement at a time when the alleged "duress" was at an end and, in fact, did pay the $10,000.00 note in full. Under such circumstances, Ware Manor waived any possible duress defense to the note upon which this action is based. *Camp v. Hatcher,* 119 Ga. App. 63 (166 SE2d 422) (1969).

4. Charter establishes a prima facie case that it was entitled to judgment on the note and that it had complied with the requirements of Code Ann. § 20-506 relative to the enforcement of the attorneys fees provision as set forth in said note. None of the evidence adduced at trial raised an issue of failure of consideration, misrepresentation, or duress in the execution of the note. Thus, no conflict existed in the evidence as to any material issue in connection with the main action and the evidence, with all reasonable deductions therefrom, demanded a verdict for Charter. Code Ann. § 81A-150 (a). Therefore, with respect to the main action the trial court should have granted Charter's motion for directed verdict. Thus, the denial of the motion for judgment notwithstanding the verdict was error. *Cheney v. Barber,* 144 Ga. App. 720 (242 SE2d 358) (1978).

5. Charter also contends that the trial court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict on Ware Manor's counterclaim which asserted fraud and deceit in the inducement of the original management contract and the subsequent breach thereof by mismanagement. The alleged fraud has no relation to acts which prevented Ware Manor from reading the contract or understanding its provisions, but consists of three prior

representations by agents of Charter, to wit: 1) that Charter had experience and success in profitably managing nursing homes; 2) that the nursing home should make a profit; and 3) that Charter's fees for managing the nursing home would be reimbursed by Medicaid. Also, it is contended that Charter's failure to disclose its own feasibility study which indicated that the facility would be a "marginal" operation for 18-24 months was actionable fraud. " '[M]isrepresentations are not actionable unless the complaining party was justified in relying thereon in the exercise of common prudence and diligence. And where the representation consists of general commendations or mere expressions of opinion, hope, expectation, and the like . . . the party to whom it is made is not justified in relying upon it and assuming it to be true; he is bound to make inquiry and examination for himself so as to ascertain the truth.' [Cits.]" *Wilkinson v. Walker,* 143 Ga. App. 838, 839 (240 SE2d 210) (1977). "Fraud cannot consist of mere broken promises, unfulfilled predictions or erroneous conjecture as to future events. [Cits.]" *Riddle v. Driebe,* 153 Ga. App. 276, 281 (265 SE2d 92) (1980). "A misrepresentation as to the status of the law, or as to a matter of law, or as to its effect upon the subject matter of a contract is a statement of opinion only and can not afford a basis for a charge of fraud or deceit . . ." *Gignilliat v. Borg,* 131 Ga. App. 182, 183 (205 SE2d 479) (1974).

Applying the foregoing principles to the case at bar we find that Ware Manor's claim for fraud based on the alleged misrepresentation as to Charter's expertise and experience in profitably operating nursing homes must fail. Such a representation was mere commendation or "puffing" and Ware Manor showed that it took no action to ascertain the truth thereof. Nor was the representation of profitability actionable as it was premised upon a number of opinions or unfulfilled predictions. Furthermore, the officer testifying on behalf of Ware Manor acknowledged that he read the assumptions upon which the projection of expected profits was based and that those assumptions included a specific disclaimer of liability. Nor was Charter's representation that Medicaid would reimburse the management fee actionable. First, this representation was prospective in nature and constituted either an erroneous conjecture or an opinion as to the law. Secondly, no evidence was presented that such statement was known to be false by Charter's agent making it or that it was made for the intent and purpose of deceiving Ware Manor. Finally, Ware Manor also blindly relied upon this representation without exercising any diligence to ascertain the truthfulness thereof, and admitted that the failure to do so was "a stupid mistake on our part."

Ordinarily, it is a jury question as to whether the person to whom the alleged false and fraudulent representation is made was negligent in relying thereon. *Mosely v. Johnson,* 90 Ga. App. 165, 166 (82 SE2d 163) (1954). However, the record is clear that Ware Manor failed to exercise *any* diligence whatsoever to discover the truthfulness of these representations. Furthermore, none of these representations was included in the management contract. Rather, the management contract contained a merger clause which stated that "this agreement contains the entire agreement . . . no representations or agreements oral or otherwise . . . not embodied herein or attached hereto shall be of any force and effect." Since Ware Manor produced no evidence that it signed the management contract without knowledge of its contents, since the alleged representations are not stated in the contract itself, and since the alleged representations do not concern concealed intrinsic defects which prevented Ware Manor from exercising its own judgment, the merger clause was effective to preclude Ware Manor's claim that it relied upon these representations when executing the contract. *SCM Corp. v. Thermo &c. Products,* 153 Ga. App. 372, 374 (265 SE2d 598) (1980). See *Alpha Kappa Psi Bldg. Corp. v. Kennedy,* 90 Ga. App. 587, 591 (83 SE2d 580) (1954).

We do not believe that Charter's failure to disclose its own feasibility study constitutes actionable fraud under the evidence adduced at trial. The feasibility study concluded that the Waycross area was "over saturated" and that for the "first 18-24 months of operation Ware Manor is going to be a marginal facility." A review of this study reveals that the opinions expressed therein were based upon facts about the area (e.g., population, labor supply, number of nursing homes, etc.) that were as easily ascertainable by Ware Manor as by Charter. The parties to this management contract were dealing with each other "at arm's length" and there was no confidential relationship between them which would have required Charter to communicate to Ware Manor the findings of its feasibility study. Compare *Harris v. Birnbaum,* 82 Ga. App. 653 (62 SE2d 204) (1950); see generally 12 EGL Fraud and Deceit, § 11 (1977 rev.). Finally, the failure to disclose this feasibility study did not amount to concealment of an intrinsic defect so as to prevent Ware Manor from exercising its own judgment. Compare *SCM Corp. v. Thermo &c. Products,* supra (1); *Ga.-Carolina Brick &c. Co. v. Brown,* 153 Ga. App. 747 (266 SE2d 531) (1980). Under the evidence produced at trial there was no duty upon Charter to disclose the feasibility study. *Ga. Farm &c. Co. v. First Fed. &c. Assn.,* 152 Ga. App. 16 (1) (262 SE2d 147) (1979).

For the foregoing reasons we do not find that the evidence was

sufficient to support a judgment in favor of Ware Manor based on actionable fraud, or fraud and deceit. *Amer. Food Ser. v. Goldsmith,* 121 Ga. App. 686 (175 SE2d 57) (1970). Accordingly, the trial court erred in failing to direct a verdict and in denying Charter's motion for directed verdict as to this count of Ware Manor's counterclaim. *McClelland v. Westview Cemetery,* 148 Ga. App. 447 (251 SE2d 351) (1978).

6. Ware Manor's counterclaim also stated a claim for breach of contract based upon "negligent and unskillful performance of the management agreement . . . resulting in a monetary loss of $76,263.00." We, therefore, address the sufficiency of the evidence to support the $10,000.00 verdict for Ware Manor under this remaining count.

" 'The burden is on the plaintiff to show both the breach and the damage [cit.], and this must be done by evidence which will furnish the jury data sufficient to enable them to estimate with reasonable certainty the amount of damages. [Cits.] It cannot be left to speculation, conjecture and guesswork. [Cit.]' [Cits.]" *Hospital Auth. of Charlton County v. Bryant,* 157 Ga. App. 330, 331 (277 SE2d 322) (1981). Ware Manor produced evidence at trial to show that Charter staffed the facility with an "unqualified" and "unlicensed" administrator who was placed in a position of responsibility "over his head." There was also evidence as to "overstocking of supplies," unwise purchasing and excessive travel expenses all resulting in monetary losses to the facility. In addition there was testimony that the person placed in the role of administrator failed to receive "adequate" support and direction from the upper echelon of Charter.

Arguably, this evidence might show a breach of contract by virtue of Charter's mismanagement or support a counterclaim in the nature of recoupment. See *Sasser & Co. v. Griffin,* 133 Ga. App. 83 (1) (210 SE2d 34) (1974); *Toole v. Brownlow & Sons Co.,* 151 Ga. App. 292, 294 (259 SE2d 691) (1979). However, the only evidence presented concerning damages was that despite Charter's projection that the profits for the first seven months would exceed $65,000.00, the facility sustained operating losses of $76,263.00 during the period of Charter's management. Each month after Charter's removal the facility made a profit and for the year 1977 a total profit of $51,700.00 was made. No evidence was presented to show how much, if any, of the actual losses incurred by the facility was the result of Charter's acts. Thus, the jury had no way to calculate the amount of damage with a reasonable degree of certainty. *Big Builder, Inc. v. Evans,* 126 Ga. App. 457 (2) (191 SE2d 290) (1972). In the instant case, as the business was not "an established business with clearly defined business experiences as to profit and loss," the loss of anticipated

profits was clearly too speculative and remote to afford a basis for computation of damages and, in addition, the loss of such profits was not directly attributable to the alleged mismanagement of Charter. *The Hip Pocket, Inc. v. Levi Strauss & Co.,* 144 Ga. App. 792, 794 (242 SE2d 305) (1978); *Molly Pitcher &c. v. Central &c. R. Co.,* 149 Ga. App. 5 (4) (253 SE2d 392) (1979). Accordingly, the verdict in favor of Ware Manor in the amount of $10,000.00 was not authorized by the evidence and the trial court erred in failing to grant Charter's motion for judgment notwithstanding the verdict.

7. In the cross appeal, Ware Manor contends that the verdict was inadequate and that the trial court erroneously excluded evidence of lost profits. In view of our holding in Division 6 of this opinion, we find the cross appeal to be without merit.

*Judgment in the main appeal (case no. 61644) reversed; judgment in the cross appeal (case no. 61645) affirmed. Deen, P. J., and Banke, J., concur.*

DECIDED JULY 8, 1981 —
REHEARING DENIED JULY 23, 1981

*W. Grady Pedrick,* for appellant.
*Terry A. Dillard,* for appellee.