**Elmer F. LONGNECKER, Plaintiff,**

v.

**ORE SORTERS (NORTH AMERICA), INC., a/k/a RTZ Ore Sorters International; RTZ Ore Sorters Ltd.; Advantech Holdings, Inc.; and Peter Derrett, Defendants.**

**Civ. A. No. C84–1340A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

April 3, 1986.

**1078**

Charles A. Edwards, Greene, Buckley, Derieux & Jones, Atlanta, Ga., for plaintiff.

L. Dale Owens, Dean Booth, Kilpatrick & Cody, Atlanta, Ga., for defendants.

### ORDER

SHOOB, District Judge.

Plaintiff Elmer F. Longnecker brought this action after being discharged from his employment by defendant Ore Sorters (North America), Inc. ("OSNA"). Presently before the Court are plaintiff's motion for leave to amend his complaint and defendants' motion for summary judgment. Although the Court is sympathetic to plaintiff's plight, defendants are entitled to judgment as a matter of law.

BACKGROUND [1]

After graduating from college in 1949, plaintiff went to work for Jeffrey Manufacturing Company ("Jeffrey"). Dresser Industries ("Dresser") acquired Jeffrey in 1974, and three years later plaintiff left Jeffrey to accept a higher position with Dresser. In 1979, plaintiff was promoted to Vice President of International Planning for Dresser. Plaintiff's professional fortunes began to wane in 1983, however, when Dresser eliminated his position during a reduction in its management staff. Plaintiff, who at the time resided in Houston, was offered several jobs within Dresser and eventually accepted a district sales-manager position. Although the shift in jobs entailed a twenty-thousand dollar salary cut, plaintiff was satisfied with his new position because it enabled him to remain in Houston and because he anticipated that his commissions would sufficiently supplement his salary.

OSNA develops and manufactures electronic ore sorting and specialty equipment for the mining and natural resources industries.[2] On June 29, 1983, Frank Hartmann ("Hartmann"), OSNA's Vice President of Finance, contacted plaintiff regarding a job opening for a Vice President of Marketing.[3] Responding to Hartmann's inquiry, plaintiff forwarded a resume and a letter of interest.

On July 4, 1983, Robert Muller ("Muller"), President of OSNA, phoned plaintiff to schedule an interview at OSNA's office in Alpharetta, Georgia. Several days later, plaintiff visited OSNA's office and met with Muller, Hartmann and then-Vice President of Marketing Ben Brown. During this initial interview, plaintiff received an introduction to OSNA's operations and the responsibilities of the Vice President of Marketing. Plaintiff also received general corporate literature, including annual reports.

Several weeks later, plaintiff returned to Alpharetta for a second interview. Plain-

---

**1.** The following factual summary is based largely on plaintiff's affidavit and deposition. The Court will note any relevant factual disputes and indicate which statements are based on sources other than plaintiff.

**2.** OSNA is affiliated with the other corporate defendants—RTZ Ore Sorters Ltd. and Advantech Holdings, Inc. Although the parties dispute the nature of the relationship between these and other affiliated entities, that dispute is not relevant to the issues reached in this order.

**3.** At this time, the marketing position was still occupied by Ben Brown, but he had already tendered his resignation.

tiff met with Muller and with OSNA sales representatives who covered the United States and European markets. The sales representatives explained that it was difficult to sell OSNA's products because customers in the mining industry were reluctant to switch to new companies or products; in fact, the sales representatives told plaintiff that OSNA had been able to sell only one of its products in the United States. That night, plaintiff had a dinner meeting with Muller and OSNA's Chairman of the Board of Directors, Peter Derrett ("Derrett").

Plaintiff contends that as a result of these interviews and meetings he was led to believe the following:

▉ That OSNA was moving its operations (or, to be more precise, the operations of its sister company, Ore Sorters Canada, Ltd.) from Peterborough, Ontario, to Alpharetta, Georgia, a move which also included augmentation of the OSNA staff; this move represented a consolidation of related Ore Sorters activities in the Atlanta area, by virtue of which I would have broad-range marketing and sales responsibility for OSNA and its related companies (actually, sales and marketing had been controlled by [Alpharetta] for some time; the operational aspects of the company were ... being transferred to [Alpharetta]; [2] [t]hat the position I was offered ... carried with it the powers and responsibilities normally associated with a Vice President of Marketing; [3] [t]hat OSNA's parent companies were financially solvent and were committed to a long-range program based in the Atlanta area, and that the officers and directors of those parent companies shared that commitment; and [4] [t]hat I was to be given the responsibility for, and full support in, developing a marketing strategy and long-range planning.

Affidavit of Elmer F. Longnecker ¶ 7. Defendants state that, as of June 1983, it was indeed their plan to consolidate operations in Alpharetta. In fact, the parties agree that by that time "Brown had assumed overall responsibility for [the consolidated marketing] efforts in his position as OSNA's Vice President [of] Marketing, and he co-ordinated the efforts ·of the sales engineers employed by OSNA, Ore Sorters Canada, [and] Ore Sorters Australia.[4]

On August 10, 1983, Muller offered plaintiff the position during a telephone conference; they also negotiated plaintiff's compensation package at this time. By letter dated August 12, 1983, Muller tendered to plaintiff an employment agreement, which provided, *inter alia,* that, upon ninety days' written notice, plaintiff could be fired without cause.[5] The agreement also included a merger clause.[6] Plaintiff joined OSNA in September, 1983.

---

4. Defendants' Statement of Undisputed Material Facts ¶ 9; Plaintiff's Response to and Counterstatement of Undisputed Material Facts ¶ 3(d).

5. 

TERMINATION OF
EMPLOYMENT

. . . . .

At any time, Ore Sorters may without cause terminate Employee's employment under this Agreement (and all compensation and bonuses to him) by giving the Employee ninety (90) days written notice prior to the effective date of termination.... In the event of termination of Employee's employment, the Employee shall be paid his base gross salary accrued up to his effective date of termination.

Deposition of Elmer F. Longnecker (Defendants' Exhibit 3, ¶ 16).

6. 

AGREEMENTS OUTSIDE OF
THE CONTRACT

This contract contains the complete agreement concerning the employment arrangement between the parties and shall, as of the effective date hereof, supersede all other agreements between the parties. The parties stipulate that neither of them has made any representation with respect to the subject matter of this Agreement except such representations as are specifically set forth herein and each of the parties hereto acknowledges that he or it has relied on its own judgment in entering into this Agreement. The parties hereto further acknowledge that any representations that may have heretofore been made by either of them to the other are of no effect and that neither of them has relied thereon in connection with his or its dealings with the other.

Deposition of Elmer F. Longnecker (Defendants' Exhibit 3, ¶ 1).

About that time, OSNA and its affiliated companies began budgeting and planning activities for 1984.[7] In the course of this process, Derrett, Muller and L.J. Gunter, Chairman of RTZ Ore Sorters Ltd.'s Board of Directors, concluded that defendants' operations would suffer losses significantly greater than those previously expected and considered acceptable. On October 8 and 9, 1983, Gunter and Derrett met in London to discuss possible shifts in strategy and organization. They discussed a variety of options, including: (1) continuing to consolidate all operations in Alpharetta; (2) reversing the consolidation and continuing only sales activities in Alpharetta; and (3) reducing staff. Eventually, they decided to halt the shift of operations from Canada to Alpharetta[8] and to allocate additional marketing responsibilities to Allis-Chalmers,[9] one of OSNA's distributors. Gunter and Derrett also decided to pare down the payroll to a minimum.

OSNA began its staff reduction in November, 1983. One of OSNA's three marketing employees, Ron Schwentafsky, was discharged. Two marketing people then remained at the Alpharetta office—plaintiff and Robert Cormack ("Cormack"), a sales engineer.

According to defendants, Derrett and Muller met in January, 1984, to decide whether to retain plaintiff or Cormack in the single remaining marketing sales position included in OSNA's budget for 1984. Defendants maintain that because OSNA's marketing and planning functions had been shifted to Allis-Chalmers, and because OSNA was still required to provide technical sales support, Cormack was retained

rather than plaintiff, who, as a marketing and planning executive, was ill-equipped to provide technical support. Plaintiff was discharged on January 31, 1984.

On July 6, 1984, plaintiff filed the instant action, advancing six claims: (1) that defendants violated the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA"); (2) that defendants RTZ Ore Sorters Ltd., Advantech and Derrett tortiously interfered with plaintiff's employment with OSNA; (3) that defendants discriminated against plaintiff on account of his national origin (American) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; (4) that defendants violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq.; (5) that defendants breached plaintiff's employment contract; and (6) that defendants fraudulently induced plaintiff to leave his employment with Dresser. Subsequently, plaintiff voluntarily dismissed with prejudice his ERISA claim and his tortious interference claim. On May 3, 1985, defendants moved for summary judgment. That motion was ripe for decision on July 17, 1985, and by order dated October 2, 1985, the Court informed the parties that it was inclined to grant defendants' motion as to plaintiff's federal claims. The October 2, 1985, order also directed the parties to address whether the Court should retain pendent jurisdiction over plaintiff's state claims. In response to that order, plaintiff voluntarily dismissed with prejudice his age discrimination and contract claims and moved for leave to amend his complaint. The Clerk resubmitted defendants' motion for sum-

---

7. Defendants have provided the information concerning OSNA's planning activities. Plaintiff states that he lacks sufficient information to admit or deny defendants' assertions. Nonetheless, plaintiff maintains that defendants should have recognized their problems at an earlier juncture.

8. According to defendants, halting the shift would provide needed capital. Because OSNA owned the Alpharetta office, it could be sold for cash. Conversely, the Canadian facility was rented.

9. During the time defendants recruited plaintiff, there had been an ongoing dispute regarding Allis-Chalmers' performance. In fact, Muller desired to terminate OSNA's relationship with Allis-Chalmers. Thus, plaintiff terms "bizarre" Derrett's decision to place additional reliance on Allis-Chalmers' marketing efforts. Derrett maintains that his decision led to a savings in operational cost, since under the distributorship agreement Allis-Chalmers, in contrast to an in-house marketing staff, earned a fee only if it sold OSNA products.

mary judgment on February 18, 1986. With this background in place, the Court will turn to the pending motions.

## DISCUSSION

### A. *Plaintiff's Motion to Amend*

■ Plaintiff has moved for leave to amend his complaint to include diversity of citizenship as a basis for jurisdiction. In paragraph 5 of his amended complaint, plaintiff states the following:

> Plaintiff Elmer F. Longnecker is fifty-nine years old, a resident of Houston, Harris County, Texas, and a United States citizen by birth.

This allegation is not sufficient to support diversity jurisdiction, since it refers to residence, not citizenship. *See, e.g., Burkhardt v. Bates,* 296 F.2d 315 (8th Cir.1961) (per curiam). ("The diversity which confers jurisdiction on a federal court is diversity of citizenship, and not diversity of residence....") Therefore, plaintiff's motion for leave to amend his complaint will be denied.

### B. *Defendants' Motion for Summary Judgment*

As explained above, plaintiff's complaint now asserts only two claims: (1) a Title VII claim of discrimination on account of national origin; and (2) a fraud claim. Defendants have moved for summary judgment on both claims. To prevail on a motion for summary judgment, the moving party must demonstrate the absence of genuine disputes of material fact and factual inferences. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Thrasher v. State Farm Fire and Casualty Co.,* 734 F.2d 637, 638–39 (11th Cir.1984) (per curiam). In ruling on a motion for summary judgment, a court must view the record in the light most favorable to the nonmoving party. *Id.* Accordingly, summary judgment is appropriate only where undisputed facts entitle a party to judgment as a matter of law. *Id.* For the reasons stated below, the Court concludes that defendants are entitled to summary judgment with respect to both of plaintiff's claims.

### 1) *The National Origin Claim*

In support of his Title VII claim, plaintiff argues that, in reducing their staff, defendants accorded preferential treatment to foreign nationals. Specifically, plaintiff challenges the decision to retain Cormack, who is a foreign national, in the sole remaining OSNA marketing position. Plaintiff asserts that defendants' bias is evidenced by Derrett's promise to "take care of the foreign chaps." [10] Deposition of John Robert McWaters at 17. According to plaintiff, Derrett's "statement is consistent with the fact that certain of defendants' non-U.S. employees—including Mr. Cormack—had contractual guarantees of travel reimbursement to their country of origin in the event of termination." Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment at 11 n. 9.

■ Plaintiff's theory is simply not cognizable under Title VII. In *Espinoza v. Farah Manufacturing Co.,* 414 U.S. 86, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973), the Supreme Court considered whether Title VII's prohibition against discrimination on account of national origin, 42 U.S.C. § 2000e–2(a)(1), applied to discrimination based on citizenship. Writing for the majority, Justice Marshall reviewed the language of section 2000e–2(a)(1) and the relevant legislative history, and concluded that "nothing in [Title VII] makes it illegal to discriminate on the basis of citizenship or alienage." 414 U.S. at 95; *see also Garcia v. Gloor,* 618 F.2d 264, 269 (5th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981).[11] Because plaintiff's pleadings and briefs make it plain his claim is based on alleged discrimination arising

---

**10.** Derrett denies making this statement, but, for present purposes, the Court accepts plaintiff's version of the relevant facts.

**11.** *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (decisions rendered before October 1, 1981, by the former Fifth Circuit are binding upon the courts of this Circuit).

from contractual arrangements linked to citizenship,[12] his Title VII claim founders.[13]

### 2) The Fraud Claim

Although plaintiff's fraud claim presents a somewhat closer question, it too must be dismissed.[14] Plaintiff concedes that, while recruiting him, defendants did not explicitly misrepresent facts. Nonetheless, plaintiff asserts that, to induce him to leave Dresser, defendants tacitly misrepresented the nature of his job and OSNA's future plans. Alternatively, plaintiff argues he "was misled by the concealment of facts regarding defendants' financial condition, their commitment to a reasoned and effective marketing program, and their ability to plan ahead." Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment at 16.

Under Georgia law, there are five elements to a fraud claim: (1) that defendant made false representations; (2) that the defendant knew the representations were false at the time he made them; (3) that the defendant intended to deceive the plaintiff; (4) that the plaintiff relied on the representations; and (5) that, as a proximate result of his reliance, plaintiff was damaged. *Eckerd's Columbia, Inc. v. Moore*, 155 Ga.App. 4, 5, 270 S.E.2d 249 (1980). To prevail under Georgia law on a claim for fraudulent concealment, a plaintiff must establish the following: (1) that the defendant concealed a material fact; (2) that the defendant's concealment was intended to induce the plaintiff to act; (3) that the defendant acted in a deceiving or misleading manner; (4) that plaintiff relied on the concealment; and (5) that plaintiff

suffered damage as a proximate result of the concealment. *See Jackson v. Smith*, 94 Ga.App. 697, 701, 96 S.E.2d 193 (1956).

Of course, a plaintiff advancing a fraud claim must show that his reliance on the defendant's actions was reasonable. *E.g., General Motors Acceptance Corp. v. Bowen Motors, Inc.*, 167 Ga.App. 463, 466, 306 S.E.2d 675 (1983). In most cases, the issue of the plaintiff's reasonableness presents a jury question; but where a promise is legally unenforceable or controverted by the express terms of a contract, a plaintiff is unable, as a matter of law, to establish that his reliance was reasonable. *White v. ITT*, 718 F.2d 994, 997 (11th Cir.1983); *Charter Medical Management Co. v. Ware Manor, Inc.*, 159 Ga.App. 378, 384, 283 S.E.2d 330 (1981). Similarly, fraud claims cannot be based on " 'general commendations ... or mere expressions of opinion, hope, expectation, and the like....' " *Id.* at 383, 283 S.E.2d 330 (quoting *Wilkinson v. Walker*, 143 Ga.App. 838, 839, 240 S.E.2d 210 (1977)).

■ In the instant case, the Court concludes as a matter of law that plaintiff cannot establish reasonable reliance on the alleged fraud and concealment. Simply stated, the theory advanced is fundamentally inconsistent with the contractual relationship into which plaintiff, an experienced and sophisticated businessman, willingly entered. Plaintiff expressly agreed to a contract providing that his employment would be terminable without cause at any time. *See supra* note 5. As stated above, "[u]nder Georgia law, if a promise is unenforceable it cannot form the basis of a

---

12. *E.g.*, Plaintiff's Response To and Counterstatement of Undisputed Material Facts at 9 ("Plaintiff's termination was motivated by an intention on the part of the defendants to accord preferential treatment to one or more younger individuals who were not citizens or permanent residents of the United States"); Brief in Support of Plaintiff's Third Motion for Leave to Amend Complaint at 4 ("Defendants' preferential treatment with respect to hiring and termination of employees who were not citizens of the United States is undisputed in the record.")

13. Defendants have offered several alternative grounds for granting summary judgment on plaintiff's Title VII claim. The Court has not rejected these grounds, but sees no reason to address them.

14. As indicated above, the Court had earlier considered declining to exercise pendent jurisdiction over plaintiff's state law claims. Because it appears that, if plaintiff were forced to bring suit in state court, his fraud claim would be time-barred, the Court will retain jurisdiction over this claim. *Henson v. Columbus Bank & Trust Co.*, 770 F.2d 1566 (11th Cir.1985).

fraud claim." *White*, 718 F.2d at 997. Since it is undisputed that plaintiff's employment was "at will," to the extent that he alleges defendants implicitly promised him employment of reasonable duration, this promise is unenforceable. *Id.; Phillips v. Liberty T.V. Cable, Inc.*, 166 Ga. App. 411, 304 S.E.2d 516 (1983).[15] In addition, in light of a contractual provision stating that his duties at OSNA could be altered at any time, plaintiff could not have reasonably relied on a guarantee of specific job functions.[16]

Moreover, plaintiff's fraud claim is barred by the terms of the merger clause contained in the employment agreement. *See supra* note 6. As a general rule, where, as here, a plaintiff elects to affirm, rather than rescind, a contract including a merger clause, he cannot sustain a claim of fraud in the inducement. *McGuire v. Winkler*, 167 Ga.App. 104, 306 S.E.2d 70 (1983); *Nixon v. Sandy Springs Fitness Center, Inc.*, 167 Ga.App. 272, 306 S.E.2d 365 (1983); *see City Dodge, Inc. v. Gardner*, 232 Ga. 766, 208 S.E.2d 794 (1974). There is a limited exception to this rule:

> Even though a party electing to affirm a contract is ordinarily bound by a merger clause continued therein ... a merger clause is without application where the fraud allegedly perpetrated concerned intrinsic defects in the article forming the

subject matter of the contract and was such as to prevent the defrauded party from exercising its own judgment.

*SCM Corporation v. Thermo Structural Products, Inc.*, 153 Ga.App. 372, 373, 265 S.E.2d 598 (1980). Thus, plaintiff's claim must fail unless it can qualify under the "intrinsic defect" exception.

Defendants argue that the concept of an intrinsic defect applies only to contracts involving land or other tangible articles. The Court agrees. In *SCM Corporation*, plaintiff sued for alleged fraud arising out of its purchase of a panel processing operation. The primary allegation of fraud was that defendant had falsely represented that the company "was an established business with profits, goodwill, and know-how." *Id.* at 374, 265 S.E.2d 598. Plaintiff also alleged that defendant had concealed certain defects in the panel processing procedure itself. The Court held that the former allegation did not involve an intrinsic defect, but that the latter allegation did. In drawing this distinction, the court cited a series of cases illustrating the intrinsic defect exception. In each of these cases, the intrinsic defect at issue was a matter of physical imperfection, rather than fiscal instability. *Batey v. Stone*, 127 Ga.App. 81, 192 S.E.2d 528 (1972) (concealment of structural defects in a house);

**15.** Plaintiff attempts to distinguish *Phillips v. Liberty T.V. Cable, Inc.*, 166 Ga.App. 411, 304 S.E.2d 516 (1983), and other "at will" employment cases on the following grounds:

> Plaintiff is not relying on statements as to the duration of his employment but upon representations that his position and duties would be such upon entering the contract that they would make the risk of leaving his job at Dresser worthwhile. Thus, his damage is not the termination of his job at OSNA but the fraudulently induced resignation from Dresser that now leaves him unemployed.

Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment at 16–17. A nearly identical argument was rejected by the Georgia Court of Appeals in *Ely v. Stratoflex*, 132 Ga.App. 569, 208 S.E.2d 583 (1974), however.

**16.**          EMPLOYMENT

> Ore Sorters hereby employs and engages Employee and Employee hereby accepts and

agrees to such engagement and employment. Employee shall be subject to the general supervision by and direction of the President and the Board of Directors of Ore Sorters. In addition to his responsibilities as Vice President-Marketing of Ore Sorters (North America), Inc., the Employee shall perform such duties as are assigned to him by the President of Ore Sorters or its Board of Directors ("Board") and those delegated to them to have authority in the operation of Ore Sorters.... *Ore Sorters reserves the right at any time to suspend the Employee from any and/or all duties being performed by the Employee and to reassign him other duties,* provided, however, such suspension or reassignment will not reduce the salary set forth in Paragraph 5 as long as the employment hereunder has not been terminated pursuant to Paragraph 16. Deposition of Elmer F. Longnecker (Defendants' Exhibit 3, ¶ 1) (emphasis added).

*Hester v. Wilson*, 117 Ga.App. 435, 160 S.E.2d 859 (1968) (same); *Southern v. Floyd*, 89 Ga.App. 602, 80 S.E.2d 490 (1954) (concealment of broken boiler). In *Charter Medical*, 159 Ga.App. at 384, 283 S.E.2d 330, the court refused to characterize as intrinsic defects a management company's allegedly fraudulent representations that it was experienced and that it could manage a nursing home profitably.[17] Under the holdings of these cases, plaintiff's allegations cannot qualify as intrinsic defects.[18]

In sum, plaintiff's fraud claim is defeated by the terms of his employment and contract with OSNA. What happened to plaintiff can properly be viewed as unfair or unfortunate. But, though plaintiff's counsel has obviously labored to develop a viable theory, defendants are entitled to judgment.[19]

Therefore, defendants' motion for summary judgment is GRANTED. Plaintiff's motion for leave to amend his complaint is DENIED. The Clerk is DIRECTED to enter judgment accordingly.

**17.** The *Charter Medical* court also held that plaintiff's allegations involved mere "commendations" or "puffing," which will not support a claim for fraud. 159 Ga.App. at 383, 283 S.E.2d 330. In the instant case, plaintiff's allegations with respect to defendants' ability to plan ahead and establish a marketing plan must be similarly defined.

**18.** Arguably, *Sires v. Luke*, 544 F.Supp. 1155 (S.D.Ga.1982), a case upon which plaintiff relies, is inconsistent with the Court's holding. In *Sires*, the court denied the defendant's motion for summary judgment based on a merger clause included in the contract under which he sold his garbage collection business to the plaintiff. Citing *Hester v. Wilson*, 117 Ga.App. 435, 160 S.E.2d 859 (1968), Judge Bowen stated that a "merger clause does not defeat [an] action where the fraud alleged ... was such as to prevent the purchaser from exercising his own judgment." 544 F.Supp. at 1165. This statement of the rule is broader than that set forth in *SCM Corporation v. Thermo Structural Products, Inc.*, 153 Ga.App. 372, 373, 265 S.E.2d 598 (1980), and quoted in the text of this order. Nonetheless, to a limited extent, Judge Bowen's holding can be read consistently with *SCM Corporation*, since plaintiff in *Sires* complained of fraudulent representations as to the condition of equipment he purchased. Still, *Sires* also involved allegations of fraudulent misrepresentations as to the status of the business' accounts receivable and the location of customers. Of course, if the views expressed in *Sires* and *SCM* differ, the Court is compelled to follow the view expressed by the Georgia Court of Appeals. *Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 178–79, 61 S.Ct. 176, 178–79, 85 L.Ed. 109 (1940); *see also Gooding v. Wilson*, 405 U.S. 518, 525 n. 3, 92 S.Ct. 1103, 1107–08 n. 3, 31 L.Ed.2d 408 (1972).

Moreover, even under the broader view followed in *Sires*, plaintiff's claim would fail to pass muster. It cannot be said that plaintiff was prevented from exercising his own judgment. As noted above, it is undisputed that defendants provided plaintiff with the opportunity to review annual reports and to meet with OSNA sales representatives. Indeed, plaintiff was informed that only one ore sorter had been sold in the United States. To be sure, defendants might have disclosed more information about OSNA's financial status, but plaintiff has not cited any case creating a duty of disclosure in the employment context and the Court is unaware of any such precedent.

**19.** It is worth noting that, even if plaintiff's claim were not legally barred, he would face an extremely difficult task at trial. There is no dispute that, at the time plaintiff was recruited, OSNA had a bona fide position available for a Vice President of Marketing. Plaintiff's argument is not that defendants knew the position was illusory, but rather that they should have known. "Fraud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events." *Riddle v. Driebe*, 153 Ga.App. 276, 281, 265 S.E.2d 92 (1980). The rule stated in *Riddle* is subject to an exception: "fraud may be predicated on a promise made with a present intention not to perform." *Ely v. Stratoflex*, 132 Ga.App. 569, 572, 208 S.E.2d 583 (1974). This exception is inapplicable, however, where, as here, the underlying promise is unenforceable. *Id.* Moreover, even if the promises at issue in the instant case were enforceable, in the Court's view plaintiff would be hard pressed to convince a jury that defendants hired plaintiff with a present intention to discharge him shortly thereafter.