## 61051, 61052. HARTRAMPF v. CITIZENS & SOUTHERN REALTY INVESTORS; and vice versa.

CARLEY, Judge.

On August 1, 1973, Hartrampf obtained a real estate acquisition and development loan and signed a note payable in two years to Citizens & Southern Realty Investors (CSRI) "in accordance with the following provisions . . ." Thereafter, through the express incorporation by reference "for all purposes" of the underlying loan agreement and loan commitment, Hartrampf's note to CSRI evidenced a promise by the former to pay the latter "in accordance with" the following "special condition:" "In addition to this loan CSRI agrees to the following terms and conditions: No later than one year from the date of closing CSRI agrees to a loan commitment of no more than $1,100,000 at 5-1/2% OBCLR for a term no longer than 6 years, with an initial disbursement of not more than $550,000 secured by portions of the above property sufficient to produce a loan to value as determined by CSRI of not more than 75%."

The note went into default. CSRI foreclosed its loan deed securing the indebtedness, bid in and bought the property, and obtained an order confirming the sale. *Hartrampf v. C. & S. Realty Investors,* 146 Ga. App. 227 (246 SE2d 134) (1978). CSRI instituted the instant suit against Hartrampf to recover the amount of the unpaid balance owing on the note after the foreclosure sale, and, in addition, interest and attorney's fees. Hartrampf answered and counterclaimed. Several of Hartrampf's defenses to liability on the note and the assertion of CSRI's liability on the counterclaim were predicated upon allegations that CSRI refused to honor its agreement to extend the second loan "commitment." After the case proceeded to the discovery stage, it became established that a second loan had indeed not been funded, the only dispute being over the reason why it had not. Hartrampf contended that he had insisted upon the funding under the second loan "commitment" but CSRI had in "bad faith" failed or refused to comply. CSRI, on the other hand, contended that Hartrampf had never requested funding of the

second development loan "commitment." After exhaustive discovery, CSRI moved for summary judgment against Hartrampf on the note and on the counterclaim. The trial judge granted CSRI's motion for summary judgment on the note and on one count of Hartrampf's two-count counterclaim. In Case Number 61051 Hartrampf appeals from that portion of the trial court's order granting summary judgment to CSRI. In Case Number 61052 CSRI cross-appeals from that portion of the trial court's order which denied its motion for summary judgment on the remaining count of Hartrampf's counterclaim. We thus have the entire case before us and we turn first to the grant of summary judgment to CSRI on Hartrampf's note.

1. "When signatures are admitted or established, production of the instrument entitles the holder to recover on it unless the defendant establishes a defense." Code Ann. § 109A-3—307 (2). CSRI urges that when all the evidence is construed most favorably for Hartrampf, as must be done in view of the procedural posture of the case, it was not error to grant it summary judgment on the note because Hartrampf admitted his signature but raised no *viable* defense to liability thereon. "A lender's refusal to make a second loan, or even misrepresentations that it would make a second loan, does not bar the lender from recovery of the amount owed under the first loan." *Rizk v. Jones,* 148 Ga. App. 473, 474 (251 SE2d 360) (1978), affd. 243 Ga. 545 (255 SE2d 19) (1979).

Hartrampf seeks to distinguish *Rizk* and the cases cited therein by urging that, unlike the note on which he is being sued, the instrument in *Rizk* was "clear and unambiguous, contain[ed] unconditioned promises to repay the lender . . . and nowhere refer[red] to a second loan." *Rizk,* 148 Ga. App. at 474, supra. It is true that, apparently unlike those in *Rizk* and cases cited therein, expressly incorporated into Hartrampf's note are the purported terms of a second contemplated but nonfunded loan "commitment." Hartrampf's argument then is that since the terms of that second "commitment" control with the same force as any other provision of the instrument, *Pittsburgh Plate Glass Co. v. American Surety Co.,* 66 Ga. App. 805, 813 (19 SE2d 357) (1942), the otherwise absolute nature of his note is changed thereby into a conditional contract containing mutually dependent covenants, Code Ann § 20-109, and he is afforded a defense to an action on the note itself if CSRI did not fund a second loan. Code Ann. § 20-904.

While we agree with Hartrampf that the facts and the note in the instant case are apparently distinguishable from those in the cases relied upon by CSRI and by the trial judge in granting summary judgment, we do not agree that those distinguishing factors afford

Hartrampf a defense to an action on the note. The purported second loan "commitment" is no more than CSRI's agreement to agree in the future. "Unless an agreement is reached as to all terms and conditions and nothing is left to future negotiations, a contract to enter into a contract in the future is of no effect. [Cits.]" *Malone Const. Co. v. Westbrook,* 127 Ga. App. 709 (194 SE2d 619) (1972). It is clear from its terms that the agreement contemplated future negotiations between the parties at some date "no later than one year" concerning the specific amount of the loan to be "no more than $1,100,000" and the maturity date to be "no longer than 6 years." Such an agreement lacks the necessary specificity, *Dolanson Co. v. C. & S. Nat. Bank,* 242 Ga. 681, 682 (1a) (251 SE2d 274) (1978); and mutuality to be enforceable. *Swindell & Co. v. First Nat. Bank,* 121 Ga. 714 (49 SE 673) (1904). " 'An agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto.' [Cit.]" *Wells v. H. W. Lay & Co.,* 78 Ga. App. 364, 367 (50 SE2d 755) (1948). Thus, Hartrampf's absolute covenant to repay the note cannot be made "dependent" upon CSRI's "covenant" to make the second unenforceable loan "commitment." "Collateral provisions in a contract, though . . . indefinite [and thus unenforceable], will not destroy the validity of the contract if the main purpose of the parties is sufficiently clear to be capable of enforcement." *Southern Airways Co. v. DeKalb County,* 102 Ga. App. 850 (5) (118 SE2d 234) (1960). See also *Wilcox v. Turner,* 51 Ga. App. 523 (181 SE 95) (1935). "This instrument amounts to nothing more than negotiations looking to a final and binding contract. To be final an agreement must comprise all the terms which the parties intend to introduce in it. [Cits.] Where it is evident from a written instrument, that the parties contemplated that it was incomplete, and that a binding agreement would be made subsequently, there is no agreement. [Cits.]" *Board of Drainage Commissioners v. Karr & Moore,* 157 Ga. 284, 299 (121 SE 298) (1923). " 'To be enforceable the minds of the contracting parties must be in such agreement on the subject matter upon which the contract purports to operate that either party might support an action thereon.' [Cit.]" *Russell v. City of Atlanta,* 103 Ga. App. 365, 367 (119 SE2d 143) (1961). Therefore, the second loan "commitment" not being "enforceable," it was not error to grant CSRI summary judgment on the note, Hartrampf's liability thereunder being absolute.

2. As we have held in Division 1, the second loan "commitment" was unenforceable, being merely an agreement to agree in the future. It was, therefore, error to fail to grant CSRI's motion for summary judgment on Hartrampf's counterclaim for its breach. *Swindell & Co. v. First Nat. Bank,* 121 Ga. 714, supra; *Russell v. City of Atlanta,* 103

Ga. App. 365, supra; *Malone Const. Co. v. Westbrook,* 127 Ga. App. 709, supra; *Nuclear Assur. Corp. v. Dames & Moore,* 137 Ga. App. 688 (225 SE2d 97) (1976).

3. Hartrampf also appeals from the grant of summary judgment to CSRI on that count of his counterclaim seeking damages for CSRI's breach of their "joint venture" agreement. It appears that this count is based upon Hartrampf's contention that the agreement between himself and CSRI, though purporting to establish a debtor-creditor relationship, was in reality a joint venture. We find this argument meritless. "[I]t is a well-settled principle of law . . . that all pertinent representations and negotiations prior to the preparation and execution of a written contract are merged therein; and where, as here, the terms of the written contract are clear and unambiguous, this court will look to it and to it alone to find the intention of the parties with respect thereto. . ." *DeLong v. Cobb,* 215 Ga. 500, 504 (111 SE2d 89) (1959). It follows, therefore, that alleged statements and representations concerning the relationship to be created which predated the written agreement are of no legal import or consequence to Hartrampf on this count of his counterclaim. The agreement itself demonstrates indisputably that the relationship of borrower and lender, not that of joint venturers, was created. *Gainesville Carpet Mart v. First Federal Savings &c. Assn.,* 121 Ga. App. 450 (174 SE2d 230) (1970); *Anderson v. Southeastern Capital Corp.,* 148 Ga. App. 164 (3) (251 SE2d 55) (1978), affd. 243 Ga. 498 (255 SE2d 12) (1979). Thus, contrary to the allegations of the counterclaim, "the record affirmatively shows that the relationship between [Hartrampf and CSRI] was that of borrower/lender and that a joint venture did not exist. [Cits.]" *Dolanson Co. v. C. & S. Nat. Bank,* 242 Ga. 681, 683, supra. The order granting CSRI summary judgment as to this count of Hartrampf's counterclaim is affirmed.

*Judgment in Case No. 61051 affirmed. Judgment in Case No. 61052 reversed. Quillian, C. J. and Shulman, P. J., concur.*

DECIDED MARCH 12, 1981.

*John A. Sherrill,* for appellant.
*Franklin R. Nix,* for appellee.