**NORTHWESTERN NATIONAL INSURANCE COMPANY, Plaintiff,**

v.

**R.S. ARMSTRONG & BROTHERS CO. and Becker Sand & Gravel Company, Defendants.**

**Civ. A. No. 3:85–1343–15.**

United States District Court, D. South Carolina, Columbia Division.

Oct. 24, 1985.

Thomas C. Salane, Columbia, S.C., for plaintiff.

James W. Orr, S.R. Anderson, Roddy Jordan, William Bost, Jr., Columbia, S.C., Charles H. Ivy, Kevin P. O'Mahony, Luke A. Kill, Atlanta, Ga., for defendants.

## ORDER

HAMILTON, District Judge.

This declaratory judgment action, 28 U.S.C. § 2201, seeks to determine the respective rights and responsibilities of the parties under a contract of insurance, containing, *inter alia,* a provision for comprehensive general liability coverage. Specifically, the plaintiff is seeking a declaration that it has no duty to provide defense and coverage for an underlying lawsuit which is presently pending before this court. The underlying civil action is one instituted by Becker Sand and Gravel Company against Deutz Corporation, d/b/a Humboldt-Wedag, USA, a Division of Deutz Corporation and R.S. Armstrong & Bro. Co., C.A. No. 3:84–1530–15 (hereinafter, the "Becker

case").[1] Jurisdiction in the instant case is based upon diversity of citizenship. 28 U.S.C. § 1332.

The matter is presently before the court upon three motions by co-defendant R.S. Armstrong & Bro. Co. (hereinafter "Armstrong"). The first motion is for judgment on the pleadings pursuant to Rule 12(c), Federal Rules of Civil Procedure, or, in the alternative, summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, on Northwestern National Insurance Company's (hereinafter "Northwestern") complaint for declaratory judgment and Armstrong's counterclaim for declaratory judgment.[2] The second motion made by Armstrong is a motion to stay all discovery on all claims by any party until such time as the court renders a decision on the first motion. As such a decision is made herein, the second motion becomes moot, and, thus, is herein denied. Likewise, Armstrong's third motion, a motion to strike the affidavit of Neil Helbling filed on behalf of Northwestern, also becomes moot at this point, as Armstrong agreed at oral argument, and is, thus, herein denied.

Directing attention to Armstrong's motion for judgment on the pleadings, or, in the alternative, summary judgment, the court must apply the appropriate legal test. The test applicable for a judgment on the pleadings or a summary judgment is whether or not, when viewed in the light most favorable to the party against whom the motion is made, no genuine issues of material fact remain and the case can be decided as a matter of law. *King v. Gemini Food Services, Inc.*, 438 F.Supp. 964, 966 (D.Va.1976), *aff'd* 562 F.2d 297 (4th Cir.1977).

The facts and circumstances of the instant case reveal that on July 24, 1984, Armstrong was served with the complaint in the Becker case. Armstrong promptly tendered the complaint, through its insurance agent, to Northwestern for its defense in the Becker case. The claims manager for Northwestern received the complaint in the Becker case on or about August 3, 1984. After discussing a reservation of rights by Northwestern, Northwestern and Armstrong executed a non-waiver agreement effective August 13, 1984, in which the parties agreed that Northwestern would reserve the coverage defense of "late notice" of the claim in the Becker case. At this point Northwestern had retained a law firm and had assumed Armstrong's defense in the Becker case.

The complaint in the Becker case against Armstrong originally contained four causes of action: (1) breach of warranties, (2) fraud, (3) negligence, and (4) unfair trade practices. On September 13, 1984, the law firm retained by Northwestern filed an answer for Armstrong and moved to dismiss the negligence cause of action for failure to state a claim upon which relief can be granted, Rule 12(b)(6), Federal Rules of Civil Procedure. Following oral argument (November 21, 1984), on November 29, 1984, this court entered an order granting the motion to dismiss the negligence cause of action. That order states that the complaint in the Becker case seeks recovery for alleged economic losses and the loss of investment arising from product ineffectiveness and that there is no allegation of any physical damage suffered to the plaintiff's property. The order goes on to state that, without an accident resulting from a dangerous defect, a party may not avail

1. The court notes only in passing that settlement negotiations and offers were ongoing between the parties in both the instant case and the Becker case on the eve of this court's scheduled hearing on pending motions in the Becker case on July 31, 1985, and prior to the withdrawal on August 26, 1985, of Northwestern's motion in the instant case for an order permitting it to participate in settlement without prejudice to its rights to seek a declaration of rights. Such negotiations as were or may be ongoing are of no bearing in the instant motions before the court.

2. Armstrong has alleged various additional counterclaims against Northwestern in which it seeks other and further relief such as punitive and exemplary damages as well as damages from alleged bad faith dealings. These additional counterclaims are not considered by the court at this time.

itself of a tort theory for product ineffectiveness or deterioration. Consequently, this court clearly indicated that it is the law of contracts and commercial transactions which should apply to the Becker case and, therefore, dismissed the negligence cause of action.

After this ruling Northwestern continued the orchestration of Armstrong's defense in the Becker case without any additional attempt to reserve its rights until May of 1985. During this time a great amount of activity took place as the parties pursued their claims and defenses. The parties in the Becker case conducted numerous depositions and filed motions for summary judgment on all remaining claims. [See, affidavit of James W. Orr, Esquire, attorney for the plaintiff in the Becker case.] Various orders were entered throughout this time by the court.

On May 14, 1985, Northwestern advised Armstrong by telephone that it was re-evaluating coverage for the Becker case. Three days later, on May 17, 1985, Northwestern sent a general reservation of rights letter to Armstrong seeking to reserve all rights to disclaim coverage for the Becker case. On May 22, 1985, Northwestern filed the instant declaratory judgment action against Armstrong and the plaintiff in the Becker case. In its complaint, Northwestern seeks to disclaim coverage under the insurance policy with Armstrong in the Becker case on four bases: (1) the absence of an "occurrence"; (2) the absence of "property damage"; (3) exclusion "(m)" of the policy which excludes damages resulting from the loss of use attributable to delay or lack of performance of any contract or due to the failure of Armstrong's products or work to meet the level of performance, quality, fitness or durability warranted or represented by Armstrong; and (4) exclusions "(n)" and "(o)" of the policy which exclude damages arising out of a defect in Armstrong's product itself or damages to property being restored, repaired or replaced by reasons of faulty workmanship.

Because the claims for declaratory judgment raised in the instant case center on an insurance policy and a non-waiver agreement made and delivered in Georgia, the South Carolina choice of law principles, as governed by the *lex loci contractus* rule, requires that the law of the state of Georgia should be applied. Both parties agree that the application of Georgia substantive law to the issues raised by the instant motions is consistent with the choice of law rules of South Carolina, which the court must apply in this diversity action.

The central issue before the court in the instant case is estoppel. The basic thrust of Armstrong's position is that, even if there was no coverage for the Becker case under the insurance policy, Northwestern is now estopped to deny liability coverage in the Becker case because Northwestern assumed and conducted the defense of Armstrong in the Becker case for more than nine (9) months without reserving its rights to contest coverage and with full knowledge of grounds to contest coverage.

The substantive law of Georgia regarding an estoppel to deny coverage, as applied to a liability insurance carrier assuming and conducting the defense of its insured, is found in the seminal case of *Jones v. Ga. Casualty & Surety Co.*, 89 Ga.App. 181, 78 S.E.2d 861 (1953). The court in *Jones* succinctly states:

The general rule supported by the great weight of authority is that if a liability insurer, with knowledge of a ground of forfeiture or non-coverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or non-coverage. The insurer's conduct in this respect operates as an estoppel to later contest an action upon the policy, regardless of the fact that there has been no misrepresentation or concealment of material facts on its part, and notwithstanding the facts may have been within the knowledge of the

insured equally as well as within the knowledge of the insurer.

*Id.* at 185–186, 78 S.E.2d at 864. *See also, State Farm Mutual Automobile Insurance Co. v. Anderson,* 104 Ga.App. ·815, 123 S.E.2d 191 (1961); *Gant v. State Farm Mutual Automobile Insurance Co.,* 109 Ga.App. 41, 134 S.E.2d 886 (1964); *Hembree v. Cotton States Mutual Insurance Co.,* 132 Ga.App. 556, 208 S.E.2d 568 (1974).

A liability carrier may avoid the estoppel that arises from the carrier's conduct in defending the insured only if it properly reserves its rights to later contest or deny coverage.

> The general rule of estoppel is … limited by the principle that a liability insurer may avoid the operation of the rule by giving the insured timely notice that, notwithstanding its defense of the action against him, it has not waived the defenses available to it against the insured. Such notice, to be effective, must fairly inform the insured of the insurer's position, and must be timely, although delay in giving notice will be excused where it is traceable to the insurer's lack of actual or constructive knowledge of the available defense. 38 A.L.R.2d 1148, 1151.

*Anderson,* 104 Ga.App. at 818, 123 S.E.2d at 193.

The reason why the insurance carrier initially assumes the insured's defense in spite of the availability of coverage defenses is not material to the estoppel issue; and, a mistake of law in assuming the defense does not prevent an estoppel. *Jones,* 89 Ga.App. at 186, 78 S.E.2d at 864.

In the instant case, because it is clear to the court that Northwestern assumed and conducted Armstrong's defense in the Becker case from August 1984 onward, two basic issues remain for the resolution of this instant matter. The first involves the August 13, 1984, non-waiver agreement and the rights reserved thereunder by Northwestern. The second issue involves a legal analysis of whether Northwestern had actual or constructive knowledge of the grounds for denying or contesting coverage when it assumed and conducted Armstrong's defense of the Becker case.

■ Turning first to the legal consequences of the August 13, 1984, non-waiver agreement, it is clear to the court from the four corners of the document that Northwestern only reserved the "late notice" defense to coverage at that time. Northwestern argues that the non-waiver agreement is ambiguous. Northwestern has submitted the affidavit of its claims manager, Neil Helbling, who executed the agreement. The affidavit includes the subjective intention of the claims manager in executing the non-waiver agreement and his reliance upon the advice of legal counsel as to the meaning of the agreement when it was executed. That intention, according to the affiant, was purportedly to reserve all of Northwestern's rights to investigate the claim and subsequently disclaim coverage and/or raise additional coverage defenses.

Under Georgia law, however, the subjective intentions of Northwestern's claims manager are not relevant insofar as they are not in reasonable accord with the language of the agreement. The case of *Hartrampf v. Citizens & Southern Realty Investors,* 157 Ga.App. 879, 278 S.E.2d 750 (1981) stands for the proposition that:

> [I]t is a well-settled principle of law … that all pertinent representations and negotiations prior to the preparation and execution of a written contract are merged therein; and where, as here, the terms of the written contract are clear and unambiguous, [the courts] will look to it and to it alone to find the intentions of the parties with respect thereto.…

*Id.* at 882, 278 S.E.2d at 752 [citations omitted].

The court is of the opinion that the non-waiver agreement of August 13, 1984, is not ambiguous. It is well settled law that no construction is required or even permissible when the language employed by the parties in their contract is plain, unambiguous and capable of only one reasonable interpretation. In such an instance, the language used must be afforded its literal meaning and plain ordinary words given

their usual significance, and this rule applies equally as well to insurance contracts as to any other contract. *Wolverine Insurance Co. v. Jack Jordan, Inc.*, 213 Ga. 299, 302, 99 S.E.2d 95, 97–98 (1957). Accordingly, the court finds no merit in Northwestern's argument that it did not intend for the non-waiver agreement to mean what it plainly says.

In the first paragraph of the non-waiver agreement, after the lead-in clause, it is stated: "Company [i.e., Northwestern] is reserving and not waiving its rights only as to the question of 'notice' ..., and the company [Northwestern] shall provide defense and coverage for this Civil Action [i.e., the Becker case], subject only to such 'notice' question." In the second sentence of the second paragraph the non-waiver agreement states: "It is the intention of this agreement to provide for an investigation defense and coverage of the said Civil Action [the Becker case] and a determination of damages resulting therefrom without in any way waiving the company's [Northwestern's] rights as to the 'notice' question."

In construing the non-waiver agreement, it is clear to the court that the agreement was a specific reservation of the rights relating to the notice question. It was not an affirmative waiver of any other rights that Northwestern had under the policy. It was no more, and no less, than a reservation of rights as to the notice question. There is no evidence in the record before the court of any other reservation of rights by Northwestern from August 1984 until the attempt to reserve its rights by letter to Armstrong dated May 17, 1985.

██ The issue of late notice has not been raised by Northwestern in the instant matter. Therefore, turning to the second issue, the court must consider whether Northwestern was estopped to reserve all its rights in May of 1985 and to deny or contest insurance coverage in this action on the policy. Armstrong contends that Northwestern had actual or constructive knowledge of the policy defenses it raises in the instant case when it received the complaint in the Becker case in August 1984. Armstrong avers that Northwestern's bases to deny coverage were plainly apparent from the allegations stated in the complaint in the Becker case. Armstrong points to the similarity in the language of the allegations of non-coverage in Northwestern's complaint in the instant case and the language of the complaint in the Becker case as demonstrating Northwestern's "knowledge" in August of 1984. On the other hand, Northwestern argues that it had actual or constructive knowledge of the policy defenses it raises in this matter *only* after discovery was conducted in the Becker case. Northwestern argues, further, that it acted reasonably to reserve additional rights.

The case law by which this court is bound imposes the doctrine of estoppel upon an insurance carrier when it takes up a defense with knowledge of a ground of non-coverage. This knowledge by the carrier of a ground, basis or fact reasonably supporting non-coverage can be actual knowledge or constructive knowledge. *Prescott's Altama Datsun, Inc. v. Monarch Insurance Co. of Ohio*, 253 Ga. 317, 318, 319 S.E.2d 445, 446 (1984); *Anderson*, 104 Ga.App. at 818, 123 S.E.2d at 193.

On the record before the court, it is clear that Northwestern undertook to provide Armstrong a defense in the Becker case. Northwestern admits this in paragraph seven (7) of its complaint in the instant matter. The first appearance in the Becker case by Northwestern's retained attorneys was August 6, 1984, and the non-waiver agreement is dated August 13, 1984. Moreover, the complaint in the Becker case has not been amended to date.

After careful examination of Northwestern's grounds for contesting coverage raised in the instant matter and the complaint filed in the Becker case, this court is of the opinion that Northwestern, as a matter of law, had actual or constructive knowledge in August of 1984 of the grounds for non-coverage which it presently seeks to raise. The application of the exclusions that Northwestern claims to ap-

ply and the various other alleged grounds of non-coverage were readily apparent from the Becker complaint filed in July 1984. In addition, after the entry of this court's order in November 1984 granting the motion to dismiss the negligence cause of action in the Becker case, Northwestern certainly had actual or constructive knowledge of grounds for policy defenses as well as a sufficient basis to understand the allegations and damages sought in the Becker case and to reserve additional rights to deny coverage. Instead, Northwestern continued to conduct Armstrong's defense of the underlying case and remain silent as to coverage issues until May of 1985. The notice afforded Armstrong of this purported reservation of rights by Northwestern in May 1985 was, in view of the applicable law, neither "timely" nor "adequate." *See, Sargent v. Allstate Insurance Co.,* 165 Ga.App. 863, 303 S.E.2d 43 (1983); *Gant v. State Farm Mutual Automobile Insurance Co.,* 109 Ga.App. 41, 134 S.E.2d 886 (1964) [the continued defense of the underlying case for five (5) months amounted to waiver or estoppel to deny coverage as a matter of law].

In addition, Northwestern's contention that there can be no estoppel since Armstrong has not been prejudiced by Northwestern's conduct of Armstrong's defense in the Becker case is without support. Georgia authority indicates that prejudice to the insured is conclusively presumed when the insurance carrier assumes the defense of its insured. *Jones,* 89 Ga.App. at 186, 78 S.E.2d at 864; *see also, Fidelity and Casualty Co. of N.Y. v. Riley,* 380 F.2d 153 (5th Cir.1967). The reason for this presumption of prejudice is that the insured has surrendered innumerable rights associated with the control of the defense including choice of counsel, the ability to negotiate a settlement, along with determining the timing of such negotiations, and the ability to decide when and if certain defenses or claims will be asserted. *Koehring Co. v. American Mutual Insurance Co.,* 564 F.Supp. 303, 313 (E.D.Wisc. 1983).

Even in the absence of the presumption, it is clear from the circumstances in the instant case that the defense of the Becker case had progressed far enough to prejudice Armstrong. After the November 1984 order dismissing the negligence cause of action and prior to Northwestern's attempt in May 1985 to reserve all rights to contest coverage, the court notes that twenty-one (21) depositions were formally noticed and/or taken. Further, seventeen (17) motions were filed by the parties and the court entered nine (9) orders. This activity is reflected in the docket entries of the Becker case and in the affidavit [filed in the instant case] of James W. Orr, Esquire, attorney for the plaintiff in the Becker case.

Since the issues in the instant case are matters of law wholly independent of any disputed fact, they are ripe for adjudication and should be decided on their merits. Although Northwestern contends that its grounds for denying coverage became evident only through discovery in the Becker case, the complaint in the Becker case and the order dismissing the negligence cause of action put Northwestern on sufficient notice to, at least, reserve additional rights. Having failed to do so, its attempted general reservation of rights (May 1985) comes too late.

For the foregoing reasons and based on the cited authorities, the court concludes that Northwestern's attempted assertion of a general reservation of rights in May of 1985 is barred by the doctrine of estoppel.

IT IS THEREFORE ORDERED that Armstrong's motion for summary judgment as to the claim and counterclaim for declaratory relief be, and the same herein is, granted. Rule 56, Federal Rules of Civil Procedure. The court declares that, pursuant to this ruling, insurance coverage is afforded under the policy to Armstrong. The court hereby directs the entry of a final judgment as to the claims adjudicated herein and determines that there is no just reason for delay. Rule 54(b), Federal Rules of Civil Procedure.

Upon entry of this order, Armstrong will be redesignated as the plaintiff herein and Northwestern will become the defendant for purposes of Armstrong's remaining claims against Northwestern. Becker Sand and Gravel Company is granted leave to petition the court for a dismissal of this action as to it. At the appropriate time, the court will enter a revised scheduling order under which the parties may pursue discovery and their respective remaining claims and defenses.

The court hereby grants Armstrong leave to file an appropriate motion for the award of attorneys' fees after the entry of a revised scheduling order. Such a motion shall set forth the specific authorities under which the request is made.