**ACROTUBE, INC., Plaintiff,**

v.

**J.K. FINANCIAL GROUP, INC., et al., Defendants.**

**Civ. A. No. 85–3982a.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 7, 1987.

472

James C. Morton, Bondurant, Mixson & Elmore, Atlanta, Ga., for plaintiff.

John L. Schaub, John G. Grubb, Jr., Atlanta, Ga., for defendants.

## ORDER

SHOOB, District Judge.

The above-styled case involves a real estate venture gone bad. Pursuant to Rule

56, Fed.R.Civ.P., plaintiff Acrotube, Inc. ("Acrotube") seeks partial summary judgment against defendant J.K. Florida Development, Inc. ("J.K. Florida"). Defendants J.K. Financial Group, Inc., J.K. Financial Corporation, and John E. Kearney ("Kearney") (referred to collectively as "the other defendants") have moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed.R.Civ.P., or, in the alternative, to transfer the action under 28 U.S.C. § 1404(a). Also before the Court are plaintiff's motion for sanctions and defendants' motion for a protective order. For the reasons stated below, the Court will (1) grant in part and deny in part plaintiff's motion for partial summary judgment; (2) deny the other defendants' motion to dismiss or transfer; (3) grant plaintiff's motion for sanctions; and (4) deny as withdrawn defendants' motion for a protective order.

For present purposes, the relevant facts can be stated simply. The parties' dispute arises out of plaintiff's investment in a real estate development in the Florida Keys known as "Seawatch at Marathon." This project was owned by Turtle Kraals, Ltd. ("Turtle Kraals"), a limited partnership controlled by defendants. Plaintiff concedes that, at the outset, it sought to acquire an ownership interest in the Seawatch project but maintains that it was unable to do so, apparently because of the terms of agreements between Turtle Kraals and its financers and investors. Consequently, plaintiff asserts, its investment took the form of a loan with simple interest and an "equity kicker." Plaintiff brought this action when it became convinced that J.K. Florida had defaulted on the loan.[1]

---

1. In addition to the claim on the loan, plaintiff asserts claims under federal and state securities statutes and common law fraud.

2. Normally, the Court resolves all jurisdictional issues before addressing the substantive claims at issue. In reality, the Court is not departing from that practice in this case. Plaintiff seeks summary judgment only as to J.K. Florida, which consented by contract to suit in Georgia.

*Plaintiff's Motion for Partial Summary Judgment* [2]

Before turning to the merits of plaintiff's motion, the Court will set forth the standard controlling practice under Rule 56. A party moving for summary judgment bears the burden of demonstrating the absence of genuine disputes of material fact and factual inferences. *Thrasher v. State Farm Fire and Casualty Co.,* 734 F.2d 637, 638–39 (11th Cir.1984) (per curiam). Recent Supreme Court cases have made it clear that "the burden on the moving party may be discharged by 'showing'—that is, pointing out ...—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. *Celotex,* 106 S.Ct. at 2553–54. Thus, summary judgment is appropriate where there is no genuine issue of material fact and, viewed in the light most favorable to the nonmoving party, the undisputed facts entitle the moving party to judgment as a matter of law. *Id.* at 2511.

Having set forth the relevant standard, the Court will consider whether Acrotube is, as it argues, entitled to summary judgment with respect to (1) Count One of the complaint, which states a claim arising out of the loan, (2) defendants' counterclaims, and (3) the defenses of personal jurisdiction and venue. The Court will address these issues in turn.

As to Count One, plaintiff has submitted sufficient evidence of the alleged

---

Thus, there can be no question as to the Court's jurisdiction with respect to that defendant. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 2182 n. 14, 85 L.Ed.2d 528 (1985); *National Equipment Rental Ltd. v. Szukhent,* 375 U.S. 311, 316, 84 S.Ct. 411, 414, 11 L.Ed.2d 354 (1964); *National Service Industries, Inc. v. Vafla Corp.,* 694 F.2d 246 (11th Cir.1982).

default[3] to shift to J.K. Florida the burden of pointing to evidence giving rise to a triable issue. *See Riberglass, Inc. v. Techni-Glass Industries, Inc.*, 804 F.2d 1577 (11th Cir.1986). Attempting to satisfy this burden, J.K. Florida offers two contentions: (1) that, although the document setting forth the parties' agreement (the "Agreement") appears to be a loan, it is in fact a capital contribution;[4] and (2) even if the transaction were a loan, there has been no default. The Court finds these arguments unavailing.

The Agreement has all the earmarks of a real estate loan featuring an equity kicker. J.K. Florida asserts, however, that the Agreement was structured as a loan solely for tax purposes. J.K. Florida further argues that plaintiff had no right to compensation unless Seawatch yielded a profit. Georgia law, which controls this dispute pursuant to section 9.15 of the Agreement, holds that an unambiguous contract is to be interpreted on its face as a matter of law. *Sim's Crane Service, Inc. v. Reliance Insurance Co.*, 514 F.Supp. 1033, 1036 (S.D.Ga.1981), *aff'd per curiam*, 667 F.2d 30 (11th Cir.1982); *King v. Gilbert*, 445 F.Supp. 479, 483 (N.D.Ga.1977), *aff'd per curiam*, 569 F.2d 398 (5th Cir.1978). Thus, summary judgment is appropriate on this issue unless the Agreement is ambiguous.

The Court concludes that, viewed in its entirety, the Agreement is without significant ambiguity. J.K. Florida was obligated to make three types of payments: (1) payments of principal; (2) payments of simple interest; and (3) payments of "Additional Interest." Pursuant to section 1.1.2, the term "Additional Interest" was defined as follows:

> [C]ompensation, in addition to the Interest, which [J.K. Florida] has agreed to pay [Acrotube] ... which shall be in an amount equal to the sum of (a) fifty percent (50%) of the Net Profits and (b) fifty percent (50%) of the Appraisal Value of Borrower's interest in the Partnership as of the Additional Interest Maturity Date, less the sum of (i) the Loan Amount advanced by Lender to Borrower ... and (ii) the total amount of the Interest.

If there had been no default, the terms of payment would have been quite plain. Pursuant to section 4.7, the outstanding principal and all unpaid simple interest would have been due on the "maturity date," June 30, 1987. The Additional Interest maturity date was October 9, 1991. Under this anticipated scenario, the Additional Interest formula would have provided J.K. Florida with a credit for its payments of principal and interest. Therefore, the Agreement evinces an unambiguous intent to establish a loan with an equity kicker; indeed, J.K. Florida in essence concedes that such an intent was manifest. *See* Memorandum in Opposition to Motion for Sanctions at 10–11.

Nonetheless, J.K. Florida contends that the Agreement was intended to operate differently in the event of a default. Its argument may be stated as follows: In the event of a default and acceleration, all forms of payment were due, including Additional Interest; consequently, the credit provided in the Additional Interest clause for principal and simple interest serves to

---

**3.** Under section 8.1.9 of the parties' agreement, a default on limited partnership debt constitutes a default by J.K. Florida on its agreement with Acrotube. Plaintiff has submitted certified copies of pleadings filed in a Florida state court foreclosure action in which J.K. Florida admitted default on limited partnership debt. Indeed, plaintiff has submitted documents demonstrating that summary judgment was entered against J.K. Florida in the Florida action and that the Seawatch property was sold in foreclosure on April 11, 1986.

**4.** Actually, J.K. Florida's argument is somewhat muddled. It apparently maintains that the parties had an underlying agreement that no payments would be due unless Seawatch turned a profit. As developed below, however, J.K. Florida now states that, although the written Agreement operates as a loan in most circumstances, its terms change markedly in the event of a default. *See infra* at 474–475.

offset any payments due for principal and simple interest.

Simply stated, J.K. Florida's position is wholly implausible and thus will not suffice to create the ambiguity needed to present a triable issue. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* —— U.S. ——, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That the Agreement would, as J.K. Florida concedes, operate as a loan under ordinary circumstances renders unreasonable the proffered construction. It is impossible to conceive why plaintiff, a sophisticated business party, would enter into an agreement that rewarded J.K. Florida in the event of a default. The only reasonable reading of the credit is that, while it may mean J.K. Florida does not owe any Additional Interest, it cannot vitiate the obligation to pay the principal and simple interest. In other words, the Additional Interest credit is relevant only to the issue whether Additional Interest is due.

The Court also rejects J.K. Florida's contention that a triable issue exists as to whether it defaulted on the Agreement. As noted above, *see supra* at n. 3, plaintiff has submitted competent evidence of a default. J.K. Florida maintains that, even though an adverse judgment was entered in the Florida action, there was never a default on the limited partnership debt. According to J.K. Florida, the judgment represents nothing more than a settlement of the foreclosure action; thus, the argument goes, J.K. Florida should be allowed to demonstrate the absence of a default at trial in this case. The Court disagrees for several reasons.

First, "the principles of res judicata and collateral estoppel apply to consent decrees as well as to ordinary judgments entered by a court." *United States v. Jefferson County,* 720 F.2d 1511 (11th Cir. 1983). Therefore, J.K. Florida could not ordinarily contest now what has already been decided in another proceeding.[5] Moreover, J.K. Florida has failed to present any evidence to support its factual contentions. It is not at all clear from the record that the Florida judgment was entered by consent—it is styled as a summary judgment. J.K. Florida has not submitted evidence suggesting that the judgment was entered by consent. Similarly, even if J.K. Florida's arguments as to a default were not precluded, it would not be entitled to reach a jury simply because it denies a default, and its response to the instant motion fails to specify evidence supporting its denial. Accordingly, Acrotube is entitled to summary judgment on this issue.[6] *See Riberglass,* at 1579.

Acrotube has also moved for summary judgment with respect to defendants' counterclaims for fraud, breach of contract, wrongful foreclosure, defamation, and stubborn litigiousness. The Court will briefly address each of these counterclaims.

Defendants' fraud claim is premised on the theory that Acrotube fraudulently induced the Agreement by promising to make a contribution to capital rather than a

**5.** It is worth noting that, strictly speaking, plaintiff is incorrect in suggesting that J.K. Florida is bound by the judicial admission it made in the Florida action. "Normally judicial admissions are binding for the purpose of the case in which the admissions are made, not in separate and subsequent cases." *In re Raiford,* 695 F.2d 521, 523 (11th Cir.1983). The more appropriate question is whether collateral estoppel applies. *Id.* Because it appears that the default issue was resolved as a necessary component of the Florida action, the offensive use of collateral estoppel is appropriate. Moreover, the Court sees no reason to exercise its discretionary power to disregard the Florida action. *See generally Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). To be frank, it is difficult to accept J.K. Florida's unadorned assertion that the admission was made in the Florida action solely to settle the case. Submitting to a foreclosure is, to say the least, a drastic settlement gesture absent a default, especially since there is no apparent reason for J.K. Florida to have admitted it defaulted in order to settle. Unless there is something unusual about Florida practice, it would have been possible to consent to a judgment without admitting to a default.

**6.** By virtue of the Court's conclusion, plaintiff is also entitled to attorney fees from J.K. Florida under the express terms of the Agreement.

loan. As discussed above, the Agreement was a loan as a matter of law. Therefore, defendants' fraud counterclaim is barred by the merger clause set forth in section 9.7 of the Agreement. As a general rule, where, as here, a party fails to rescind a contract that contains a merger clause, it cannot sustain a claim of fraud in the inducement.[7] *Longnecker v. Ore Sorters (North America), Inc.,* 634 F.Supp. 1077, 1083–84 (N.D.Ga.1986); *McGuire v. Winkler,* 167 Ga.App. 104, 306 S.E.2d 70 (1983); *Nixon v. Sandy Springs Fitness Center, Inc.,* 167 Ga.App. 272, 306 S.E.2d 362 (1983). Accordingly, the fraud claim cannot stand.

■ Count Two of defendants' counterclaim advances a claim for breach of the alleged capital contribution agreement and a claim for defamation. With respect to the breach of contract claim, plaintiff correctly points out that *Hartrampf v. Citizens & Southern Realty Investors,* 157 Ga.App. 879, 278 S.E.2d 750 (1981), is on four corners with this case. There, appellant argued that a putative loan was in fact a joint venture agreement. The Court rejected appellant's characterization of the agreement and thus affirmed the dismissal of his claim for breach of the alleged joint venture agreement. In reaching this conclusion, Judge Carley stated the following:

'It is a well-settled principle of law ... that all pertinent representations and negotiations prior to the preparation and execution of a written contract are merged therein; and where, as here, the terms of the contract are clear and unambiguous, this court will look to it ... alone to find the intention of the parties....' It follows, therefore, that alleged statements and representations concerning the relationship to be created which predated the written agreement are of no legal import....

*Id.* at 882, 278 S.E.2d 750 (quoting *DeLong v. Cobb,* 215 Ga. 500, 111 S.E.2d 89 (1959)). Applying the principles set forth in *Hartrampf,* the Court must dismiss defendants' breach of contract counterclaim because the Agreement was a loan as a matter of law and because any representations to the contrary are not enforceable.

■ The defamation component of defendants' counterclaim is stated as follows:

Plaintiff has slandered and defamed Defendants by falsely and maliciously representing to others in the community that J.K. Florida Development, Inc. is in default of the alleged indebtedness to Plaintiff and that the other named Defendants conspired with J.K. Florida Development, Inc. in connection therewith, when in truth no such default can exist because of Plaintiff's express agreements and representations.

Counterclaim ¶ 18. Of course, since the Court has held that J.K. Florida was in default, no slander could arise from a statement made to that effect. On the other hand, the Court cannot dismiss the counterclaim to the extent it involves allegations of slanderous remarks as to defendants' "conspiracy." Plaintiff's motion reveals nothing relevant to such a conspiracy or to plaintiff's allegedly slanderous statements. Accordingly, the Court will grant in part and deny in part plaintiff's motion for summary judgment with respect to defendants' slander counterclaim.[8]

■ Turning to defendants' final counterclaim—that plaintiff has been stubbornly litigious—the Court concludes that plaintiff is entitled to summary judgment on this point. In support of this claim, defendants refer only to plaintiff's position with respect to the Agreement. Memorandum of Points and Authorities in Support of Motion to Dismiss and Opposition to Plain-

---

7. The "intrinsic defect" exception to the general rule is plainly inapplicable here. *Longnecker v. Ore Sorters (North America), Inc.,* 634 F.Supp. 1077, 1083–84 (N.D.Ga.1986).

8. Plaintiff argues that the slander counterclaim should be dismissed because defendants failed

to plead special damages. The Court concludes, however, that the allegedly slanderous remarks involve defendants' business. Therefore, proof of special damages is not required. *See* O.C.G.A. § 51–5–4.

tiff's Motion for Partial Summary Judgment at 27. The Court has ruled in plaintiff's favor on the legal significance of the Agreement; it follows that defendants' counterclaim for stubborn litigiousness should be dismissed.

Plaintiff also seeks partial summary judgment as to J.K. Florida's personal jurisdiction and venue defenses. As noted above, *see supra* at n. 2, the Court can properly entertain plaintiff's claims against J.K. Florida in light of that corporation's consent to suit in Georgia. *E.g., National Service Industries, Inc. v. Vafla Corp.,* 694 F.2d 246 (11th Cir.1982). Accordingly, J.K. Florida's personal jurisdiction and venue defenses fail as a matter of law.

In sum, the Court will grant in part and will deny in part plaintiff's motion for partial summary judgment.

*The Other Defendants' Motion to Dismiss or Transfer*

The other defendants have moved to dismiss the case for lack of personal jurisdiction. Noting that they were not parties to the Agreement under which J.K. Florida waived its jurisdictional objections, the other defendants argue that jurisdiction is improper under the Georgia long-arm statute. It would be pointless for the Court to reach that issue, however, since plaintiff's federal securities fraud claim provides an independent basis for asserting personal jurisdiction over defendants. 15 U.S.C. § 78aa. Because plaintiff's other claims are factually and conceptually linked to the securities fraud claim, they could be heard under the Court's pendent jurisdiction, even if the long-arm statute were inapplicable. *Hargrave v. Oki Nursery, Inc.,* 646 F.2d 716, 719 (2d Cir.1980); *International Controls Corp. v. Vesco,* 593 F.2d 166, 175 n. 5 (2d Cir.), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2884, 61 L.Ed.2d 311 (1979); *see generally United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Therefore, as long as the federal securities claim is part of the case, the Court cannot dismiss plaintiff's claims against the other defendants under Rule 12(b)(2).

Little needs to be said regarding defendants' motion to transfer venue. Absent clear justification, courts in this district have consistently refused to override a plaintiff's choice of forum, especially where, as here, the plaintiff has brought suit in its home district. *MacMillan Bloedel, Inc. v. Hamric Transportation, Inc.,* 617 F.Supp. 447, 448 (N.D.Ga.1985); *Thermo-Cell Southeast, Inc. v. Technetic Industries,* 605 F.Supp. 1122, 1123–24 (N.D. Ga.1985); *A.L. Williams & Assoc. v. D.R. Richardson & Assoc.,* 98 F.R.D. 748, 754 (N.D.Ga.1983); *Flowers Industries v. Bakery & Confectionery Union,* 565 F.Supp. 286, 293 (N.D.Ga.1983). To justify a transfer, the moving party must "demonstrat[e] that the balance of convenience and justice weighs heavily in favor of the transfer." *A.L. Williams,* 98 F.R.D. at 754. Accordingly, when assessing a motion under § 1404(a), a court must consider whether a transfer would make it substantially more convenient for the parties to produce evidence and witnesses. *E.g., Koehring Co. v. Hyde Construction Co.,* 324 F.2d 295, 296 (5th Cir.1963).

In the instant case, defendants have failed to satisfy the heavy burden of justifying a transfer. It would indeed be easier for one key witness—Kearney—to appear in Florida. But Kearney signed the Agreement on behalf of J.K. Florida, and it hardly seems unfair to hale him into this Court inasmuch as the Agreement specifically provided for suit in Georgia. Furthermore, although it may be impossible to compel certain witnesses to appear in this district, defendants have failed to demonstrate that the relevant testimony cannot be presented adequately via depositions. *See MacMillan Bloedel,* 617 F.Supp. at 449; *Flowers Industries,* 565 F.Supp. at 293.

Therefore, defendants' motion to dismiss or transfer will be denied.

*Plaintiff's Motion for Sanctions*

Plaintiff's motion for sanctions is based on an affidavit filed by Kearney on February 7, 1986. In that affidavit, Kearney

stated that Turtle Kraals had, in connection with the Florida foreclosure action, denied the existence of a default. But, almost a month before Kearney's affidavit was filed, J.K. Florida and Turtle Kraals filed in the Florida action an amended answer admitting a default. When plaintiff's counsel learned of the amended answer and other facts refuting Kearney's affidavit, he contacted opposing counsel, who declined to alter defendants' stance. Consequently, plaintiff's counsel travelled to Florida to acquire copies of the relevant documents.

■ Kearney's affidavit fails to satisfy the standard of candor applicable to parties appearing before this Court. The testimony he offered was flatly at odds with facts indisputably within his knowledge. For example, Kearney stated the following:

> Acrotube has not shown that Turtle Kraals, Ltd. has defaulted on any indebtedness secured by the 'Seawatch at Marathon' property, but only alleges that such a default exists. J.K. Florida Development, Inc. denies that any such default exists. *A holder of such indebtedness has claimed that a default exists, however, [sic] Turtle Kraals, Ltd. denies that a default exists.*

Affidavit of John E. Kearney at 6 (emphasis added). The emphasized segment of the above-quoted passage is simply false. Contrary to Kearney's assertion, J.K. Florida had admitted a default in the Florida action. Even if the Court were to accept *arguendo* defendants' unsupported contention that the admission was made solely for settlement purposes, *but see supra* at n. 5, Kearney had an obligation to state the facts as he knew them. In the Court's view, Kearney's lack of candor cannot be excused as litigation strategy or innocuous coyness. He is guilty of the conduct Rule 56(g), Fed.R.Civ.P. is designed to deter—an effort to mislead the Court and to delay the proceedings.

■ Plaintiff seeks $1557.50 in travel expenses incurred as a result of Kearney's affidavit and $6210.00 in legal fees, representing 62.1 billable hours at the rate of $100 per hour. The Court has no problem with the travel expenses. *See generally* C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure Civil 2d* § 2742 (2d ed. 1983). The legal fees sought seem excessive, however. Specifically, it appears that a significant percentage of counsel's time was spent on activities that cannot properly be charged at an attorney's rate. Counsel shall address this issue during the settlement conference ordered below. If the issue is not resolved, plaintiff's counsel should submit an application under L.R. 270, N.D.Ga.

In sum, plaintiff's motion for sanctions will be granted.

*Defendants' Motion for a Protective Order*

During a telephone conversation on December 18, 1986, the Court's law clerk informed defendants' counsel that the pending motions would be taken under advisement in ten days and asked whether the motion for a protective order was moot. Counsel later requested that the motion be withdrawn with leave to renew. The Court will therefore deny the motion as withdrawn. An issue remains, however, as to whether defendants should be taxed with plaintiff's attorney's fees in connection with this motion. Counsel shall discuss this issue during the conference ordered below.

*Conclusion*

In sum, the Court GRANTS IN PART and DENIES IN PART plaintiff's motion for partial summary judgment; DENIES the defendants' motion to dismiss or transfer; GRANTS plaintiff's motion for sanctions; and DENIES as withdrawn defendants' motion for a protective order.

Because this order has resolved the critical issue in the case, the Court thinks it advisable that counsel meet in person in a good faith effort to resolve the remaining issues. Counsel are DIRECTED to hold a settlement conference within twenty days and within ten days thereafter to report by letter the results of that conference. If the parties are unable to settle the case, the

Court will enter a suitable extension of the discovery period.

Finally, the Court notes that plaintiff has requested that final judgment on Count One be entered against J.K. Florida pursuant to Rule 54(b), Fed.R.Civ.P. The Court is inclined to grant this request. If the settlement conference proves unsuccessful, plaintiff should submit a draft judgment within ten days after the conference. J.K. Florida shall have seven days thereafter in which to file opposition to such an order.