A90A0562. PATEL v. GINGREY ASSOCIATES et al.
(395 SE2d 595)

BIRDSONG, Judge.

Patel appeals from the grant of summary judgment to the appellees ("the Gingreys") on their claims against Patel arising from the purchase of a motel. Although Patel admits that he defaulted on the

note, he contends that he is not liable because the Gingreys violated their father's agreement to consent to a sale of the motel by unreasonably withholding their consent to a proposed sale of the motel to a qualified buyer.

The documents in the record show that in 1979 Patel and his brother purchased all the stock in the motel from James F. Gingrey, Sr. ("Mr. Gingrey"). The Patels and Mr. Gingrey executed a promissory note, a deed to secure debt, a hypothecation agreement, an agreement on certain financial adjustments, and a seller's warranties and a hold harmless agreement. Additionally, Mr. Gingrey also executed an agreement concerning granting his consent to a future sale.

According to Patel, this agreement was executed because the Patel brothers were buying the motel as investment to hold and then resell, and a "due on sale" clause would have prevented them from doing that. Therefore, Patel contends he told Mr. Gingrey that they would not purchase the motel unless Mr. Gingrey agreed to let them sell the property. Thus, Mr. Gingrey agreed that he would "allow a future sale of the stock of [the motel] and or the property . . . to a qualified buyer if the purchaser is first approved by [him], and to not unreasonably withhold [his] approval."

In 1980 Mr. Gingrey died. For federal tax purposes and to convert the motel corporation to a partnership, Patel and his brother agreed with Mr. Gingrey's sons to, in essence, "resell" the motel from the Gingrey sons to the Patels. Contrary to the documents prepared in 1979, the parties agreed to treat the 1979 sale as one from the Gingrey sons to the Patels, by Mr. Gingrey as his sons' agent.

Therefore in 1980, the parties entered into an agreement and a loan and security agreement. The agreement recited that the 1979 sale was from the Gingrey sons to the Patel brothers, and that the documents concerning the 1979 sale were given to Mr. Gingrey, as agent for his sons, and that the Patels were dissolving the corporation and distributing the assets to the Patel brothers and the partnership. The agreement, however, did not mention the 1979 agreement by Mr. Gingrey about giving his approval of future sales. In the loan and security agreement, the Patels and the partnership assumed the outstanding liabilities of the motel corporation. The Patels also issued a new note for the outstanding balance of the 1979 note and a new deed to secure debt, which had no due on sale clause. In 1981, at the request of the Gingrey sons, the Patels executed a corrected deed to add a due on sale clause.

According to Patel, he sought to sell the motel in 1983 to purchasers who owned and operated other motels in the southeast, however, the Gingreys refused to consent to the sale. He contends that, although the holder of the first mortgage agreed to the sale, the Gingrey sons refused to consent unless the holder of the first mortgage

agreed to subordinate its lien to that of the Gingreys. Patel contends that when the holder of the first mortgage refused, the deal fell through. The Gingreys deny this version of the events. They maintain that although they were approached about a possible sale, they did not refuse to consent.

Thereafter, the Patels continued to make payments on the note until November 1987. After they quit making payments, the Gingrey sons foreclosed on the property, confirmed the deficiency, and filed the present action to recover the amount still due. Although not disputing that the note was in default, Patel asserted that the Gingrey sons' violation of Mr. Gingrey's 1979 agreement was a defense to the suit. After the Gingreys' motion for summary judgment was granted, Patel appealed.

Patel contends the trial court erred by granting summary judgment because genuine issues of material fact remain for trial. Patel also contends that the trial court erred by holding the agreement was invalid when written, or if valid then, merged into the agreements entered into in 1979 and 1980. *Held*:

1. Pretermitting the other issues in this appeal is whether, in the first instance, breach of Mr. Gingrey's agreement would excuse future performance of Patel's obligations on the note. We find that it would not. This agreement by Mr. Gingrey, assuming its validity, is independent of Patel's obligations. Neither the documents executed in 1979 or 1980 nor the corrective security deed executed in 1981 referred to this agreement, and certainly none incorporated the separate agreement. Also, the terms of Mr. Gingrey's agreement do not purport to modify, amend, or incorporate the note or any document executed in 1979 or thereafter. With these facts, we must conclude that the parties did not intend that Mr. Gingrey's agreement and the note and other documents would be integrated with and dependent on the other. Instead the agreement plainly is a separate agreement affecting how Mr. Gingrey would exercise his consent to any future sale of the motel's stock or property. Therefore, since the two agreements are independent and not conditional upon the other, a breach of Mr. Gingrey's agreement would not be a defense to Patel's default on the note. See OCGA § 13-1-7; *Hartrampf v. Citizens &c. Investors*, 157 Ga. App. 879, 881 (278 SE2d 750).

2. Moreover, we do not find Mr. Gingrey's agreement to be enforceable in any event. "A contract is an agreement between two or more parties for the doing or not doing of some *specific* thing." (Emphasis supplied.) OCGA § 13-1-1. Mr. Gingrey's agreement shows that the specific thing he agreed to do was in the future not "unreasonably withhold [his] approval" of a qualified buyer of the motel's stock or property.

The agreement provides no definition of its terms and provides

no standards of reasonableness or qualification, either subjective or objective, that Mr. Gingrey was to apply. Although, as Patel suggests, the term "qualified buyer" may have an accepted definition in real estate sales, nothing in the agreement suggests that the parties intended that definition, and further, Mr. Gingrey did not agree to consent to a sale to any qualified buyer. The agreement shows that he reserved his right to consent or not, and that he agreed only "to not unreasonably withhold [his] approval."

An agreement merely not to be "unreasonable" in the future is so uncertain, indefinite, and vague that it cannot be an enforceable contract. See *Farmer v. Argenta*, 174 Ga. App. 682, 683 (331 SE2d 60). To be valid an agreement must be expressed plainly and explicitly enough to show what the parties agreed upon, and an agreement expressed in incomplete or incomprehensive terms cannot be enforced. *West v. Downer*, 218 Ga. 235, 241 (127 SE2d 359). The agreement not to be "unreasonable" does not convey with reasonable certainty what Mr. Gingrey was obligated to do (see *Green v. Zaring*, 222 Ga. 195, 198 (149 SE2d 115)), and whether there had been performance. *Bagwell-Hughes, Inc. v. McConnell*, 224 Ga. 659, 662 (164 SE2d 229). This agreement is subject entirely to conjecture and, consequently, cannot be enforced. *Hughes v. McMichen*, 164 Ga. App. 304, 305 (296 SE2d 233).

3. Finally, even assuming that the agreements had been dependent and that Mr. Gingrey's agreement was enforceable, Patel cannot disregard the alleged breach of that agreement, comply with his obligations for three years, and then assert the breach as a defense to this action. We find as a matter of law that Patel waived his right to assert the purported breach of Mr. Gingrey's agreement and cannot assert that breach as a defense to this action. *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 257 (381 SE2d 322); *James v. Mitchell*, 159 Ga. App. 761, 762 (285 SE2d 222). *Kelly v. Morris*, 46 Ga. App. 353, 355 (167 SE 716). Although waiver can be a jury issue when the evidence is conflicting, under the facts of this case, no such issue is presented.

4. Accordingly, the trial court did not err by granting summary judgment to the Gingreys. A judgment right for any reason will be affirmed. *Farmer v. Argenta*, supra.

*Judgment affirmed. Banke, P. J., and Cooper, J., concur.*

ON MOTION FOR REHEARING.

Patel contends that our determination that Mr. Gingrey's agreement, which promised only not to unreasonably withhold his consent to a proposed sale, was unenforceable is inconsistent with our earlier opinion in *Stern's Gallery of Gifts v. Corporate Property Investors*, 176 Ga. App. 586 (337 SE2d 29). *Stern's Gallery* found enforceable a

provision in a commercial lease not to unreasonably withhold consent to a sublease. We find *Stern's Gallery* to be distinguishable because the provision in that case was subject to enforcement on commercial reasonableness standards. Such standards are inapplicable to the agreement in this case since Mr. Gingrey's agreement reserved his right of approval of even qualified, i.e., commercially reasonable, buyers, and thus eliminated commercial reasonableness as a standard for determining what was unreasonable.

Further, since we found as a matter of law that under the facts of this case Patel had waived any rights he may have had under Mr. Gingrey's agreement, no jury issue was created on this issue. *Kusuma v. Metametrix, Inc.,* 191 Ga. App. 255 (381 SE2d 322).

DECIDED JUNE 11, 1990 —
REHEARING DENIED JULY 3, 1990 — CERT. APPLIED FOR.

*J. Patrick Claiborne,* for appellant.
*Broyles, Dunstan & Dunstan, Mark A. Cleary,* for appellees.